GILLMANN and another, Executors, vs. HENRY.

*November 10 — November 22, 1881.*

*(1) Contract construed. (2) Accommodation maker defined.*

1. H., as broker, negotiated a sale of G.'s land to L. for $27,500. L. having only $22,500 in cash to pay for the land, by mutual agreement between the three, G. deeded the land to H. and received $22,500, less H.'s commission on the sale, and also received H.'s note for $5,000, secured by H.'s mortgage of the land; and H. conveyed the land to the party designated by L., subject to the payment of said $5,000 note and mortgage. All these writings were contemporaneous. *Held*, that, construing all the instruments together, as a single transaction, H. is absolutely liable to G. on said note, and he cannot set up a contemporaneous oral agreement between himself and G., by which the latter was to collect the $5,000 by foreclosure of the mortgage, without holding H. personally liable on the note.

2. One is to be regarded as an accommodation maker of a note only where he receives nothing for his signature, and the payee parts with nothing therefor; and the facts above stated show that H. was not such a maker of the note in suit.

TAYLOR, J., dissents.

APPEAL from the Circuit Court for *Iowa* County.

Action upon a promissory note executed by the defendant, *Henry*, July 20, 1880, wherein he promised to pay, three months thereafter, to the order of Robert George, the plaintiffs' testator, $5,000, with interest at eight per cent. The answer, in effect, alleges that a few months prior to the making of the note the defendant undertook and agreed with George to use his best endeavors to sell a certain tract of land, situated in Colorado, belonging to George, which he represented to be valuable coal land, for a commission to be allowed therefor on the sale; that, after considerable negotiation with sundry parties, the defendant succeeded in negotiating a sale through J. Allen Long, who agreed to purchase the land for the Philadelphia & Pittsburgh Coal Company, for whom he was acting, for the sum of $27,500, net, over and above the commissions which said Long proposed to charge the company, which proposition George and the defendant agreed to accept, with the understanding and agreement that the defendant should have for his commissions out of such purchase price the sum of $3,000. Upon closing up the negotiations it was found that Long could only pay down $22,500, and that he desired a credit of three months for the other $5,000. Thereupon, and for the better security of George, and in pursuance of the understanding and agreement of Long, George, and *Henry*, George and his wife conveyed the land to *Henry*, and *Henry* executed the note in question and a mortgage back to George upon the same land, and delivered them to George; and at the same time *Henry* executed a deed of the land to the Philadelphia & Pittsburgh Coal Company, subject to the payment of the said $5,000 note and mortgage so given

to George, and delivered said deed to Long, who, at the same time, paid over to *Henry* the said $22,500; and *Henry* thereupon paid over to George $19,500 of the amount so received, and retained the other $3,000 as his commission on such negotiations and sale. It is also alleged in the answer, in effect, that at the time of making the deeds, note and mortgage, " there was made the further explicit and distinct agreement between the said plaintiff [George] and this defendant, *verbally*, and well and clearly stated and understood between them, that the $5,000 note was given without any consideration whatever paid to this defendant therefor; that in no event whatever was the said plaintiff [George] to call on this defendant for payment of any part thereof, but the said plaintiff was to look solely to the said Philadelphia & Pittsburgh Coal Company, and his security by mortgage on the said coal land, for payment of the said note; and if the said note was not paid when due, then and in that case the said plaintiff [George] promised and agreed that this defendant should and was to have the management, control and collection thereof; and said note was to be collected by foreclosing the said mortgage and selling the said land described therein."

It is also, in effect, alleged in the answer, that George made certain misrepresentations in regard to the land, and that George had sued *Henry* on the note because he was fearful the company would set up damages by reason of such misrepresentations if he had proceeded to foreclose the mortgage; and that George was seeking to collect the note of him, the defendant, "in contempt and violation of his said agreement," so "verbally" made at the time of executing the papers. On the death of George, who was the original plaintiff, the action was revived in the name of his executors, who demurred to the answer "because said answer, on its face, does not state facts sufficient to constitute a defense." From an order overruling the demurrer, plaintiffs appealed.

For the appellants there was a brief by *Wilson & McIlhon*, and oral argument by *Mr. Wilson:*

The denials of the answer are fully overcome by the admissions. If a fact sustaining the plaintiff's right is expressly admitted in any part of the answer, it is to be taken as true against the defendant, and plaintiff is relieved from the necessity of proving it. *Hartwell v. Page*, 14 Wis., 50. The oral agreement set up changes the terms of the note, and cannot be proved on the trial, and constitutes no defense. *Foster v. Clifford*, 44 Wis., 569; *Hubbard v. Marshall*, 50 id., 322; *Cooper v. Cleghorn*, id., 113; *Charles v. Denis*, 42 id., 56; *Crawford v. Earl*, 38 id., 312. In the absence of fraud, accident or mistake, the rule is the same in this respect in equity as at law. *Forsythe v. Kimball*, 91 U. S., 291.

For the respondent there was a brief by *Henry & Smith*, and oral argument by *Mr. Smith.*

CASSODAY, J. It is a well settled rule of this court, that "all contemporaneous agreements between the same parties, and in relation to the same subject matter, are to be taken together and construed as one instrument, for the purpose of determining the character of the transaction and the intention of the makers." *Norton v. Kearney*, 10 Wis., 448. Thus it has been held that "a chattel mortgage and a written agreement to govern the same subject matter between the parties, executed contemporaneously, must be treated as one contract." *Blakeslee v. Rossman*, 43 Wis., 116.

This being the law, it is very evident that the deed from George to *Henry*, and the note and mortgage from *Henry* back to George, and the deed from *Henry* to the company, must "be taken together and construed as one instrument for the purpose of determining the character of the transaction and the intention of the makers." Thus taken, they seem to cover the whole transaction, and leave no room for doubt, uncertainty or ambiguity with respect to it. By his deed,

George parted with all title to the land, supposed to be of the value of $27,500, and vested the same absolutely in *Henry*. That was a full performance and completion of the transaction so far as George was concerned. *Henry* executed the $5,000 note and mortgage back to George, and delivered the same to him, together with $19,500 of the money received from Long, and retained the other $3,000 received from Long as his agreed commissions, and conveyed the land to the company, subject to the mortgage, as directed by Long. This closed the contract so far as *Henry*, Long and the company were concerned, and left nothing to be done by them except the payment to George of the note and mortgage according to the agreement therein contained. By that written agreement, *Henry* promised to pay the amount of the note to George. That *Henry* executed and delivered to George that written agreement as representing so much consideration for the land, is admitted by the answer. It is there claimed, however, that such was not the intent of the parties, because they, at the same time, *verbally* agreed that George should "in no event whatever" call upon *Henry* "for payment of any part" of the note, but should "look solely to the said Philadelphia & Pittsburgh Coal Company, and his security by mortgage on the said coal land, for payment of the said note."

Thus the oral agreement sought to be established is squarely in conflict with the written agreement, which is admitted. The note representing the debt "is the principal thing," and the mortgage is collateral and incident to it. *Matthews v. Wallwyn*, 4 Ves. Jr., 129; *Croft v. Bunster*, 9 Wis., 510; *Catlin v. Henton*, 9 Wis., 476. Thus we are called upon to allow parol evidence to destroy the effect of, and wipe from the case, the written agreement of the defendant contained in the note, which "is the principal thing," and leave the mortgage, which is merely collateral and incident to the note, as though that were all that George ever intended to take, and all that *Henry* and Long, acting for the coal company, ever

intended to give, as representing the $5,000 remaining unpaid
of the purchase price. If the note, which was the principal
thing, can thus be wiped out by a parol agreeement made at
the same time, then there would be no reason why the mort-
gage, which was merely incident to the note, could not be
wiped out by a similar parol agreement made at the same
time. And if both could be wiped out by such contempora-
neous parol agreement, then it would be difficult to draw a
distinction which would prevent the deeds from being set aside
by similar verbal agreements. But we do not understand that
written contracts can be thus easily disposed of. In *Cooper
v. Tappan*, 4 Wis., 369, an attempt was made to prove by
parol that the collection of the note was not to be enforced by
legal proceedings for two years, but WHITON, C. J., said: "The
principle that a party to a written contract cannot vary or
control it by a parol agreement, made before the written
contract was entered into, or simultaneously with it, is too
well settled to require the citation of any authorities to sup-
port it." To the same effect are *Gregory v. Hart*, 7 Wis.,
532; *Sigerson v. Cushing*, 14 Wis., 547–8; *Farmers' Loan &
Trust Co. v. Commercial Bank*, 15 Wis., 424; *Crawford v.
Earl*, 38 Wis., 312; *Knox v. Clifford*, id., 651; *Charles v.
Denis*, 42 Wis., 56; *Eaton v. McMahon*, 42 Wis., 484; *Fos-
ter v. Clifford*, 44 Wis., 568; *Cooper v. Cleghorn*, 50 Wis.,
113; *Hubbard v. Marshall*, id., 322; *Ortmann v. The Bank*,
39 Mich., 518; *Underwood v. Simonds*, 12 Met., 275; *Wiener
v. Whipple*, *ante*, p. 298. The facts in the last case cited
were quite similar to this, as will appear from the statement
of Mr. Justice LYON in *Hubbard v. Marshall*, *supra*. This
does not preclude the court from looking at the relative situa-
tion of the parties, and the nature and object of their trans-
actions; but it cannot give effect to any intention which is
not expressed by the language of the instrument, when looked
at in the light of such facts as are properly before it. 15
Wis., 424; 14 Wis., 547–8. Where there is no ambiguity in

the contract, parol evidence is not admissible to explain it. *Smith v. Scott*, 31 Wis., 421; *Kelsey v. Chamberlain* (Mich.), 10 N. W. Rep., 355.

In *Strachan v. Muxlow*, 24 Wis., 21, it was held that "where the purchaser from A. gave his promissory note, payable to B. or his order, an alleged contemporaneous agreement that he should be at liberty to pay the note before maturity (stopping the interest), or to pay it to A. when due, held to contradict the note." See *Lowber v. Connit*, 36 Wis., 176.

Counsel seek to bring the defendant within the rule applicable to an accommodation maker of a note: "An accommodation bill is a bill to which the accommodating party, be he acceptor, drawer or indorser, has put his name, without consideration, for the purpose of benefiting or accommodating some other party, who desires to raise money on it and is to provide for the bill when due." Byles on Bills, 128 (208); Bigelow on Bills & Notes, 670. Daniell gives the following definition: "An accommodation bill or note is one to which the accommodating party puts his name, without consideration, for the purpose of accommodating some other party who is to use it and is expected to pay it." 1 Daniell on Neg. Inst., § 189.

Certainly the defendant is not an accommodation maker within either of these definitions. For whose accommodation was the note given? Was it for the accommodation of George? He did not wish to raise money on the note. An accommodation maker receives nothing as consideration, and the party accommodated parts with nothing. Here, George not only parted with the entire title to the land, but vested it absolutely in the defendant, who gave back to George the note and mortgage as representing the amount of the consideration which George had not received for his deed, but which was thereby secured to be paid to him.

In both the note and mortgage the defendant acknowledges the receipt of the consideration therefor from George, and the

answer admits his actual receipt of the same by way of the deed. Besides, the defendant thereby secured to himself the $3,000 in cash by way of commissions. George, having parted with the land, had nothing left to show for the land except the cash he had received, and the note and mortgage. Such being the facts, it would seem to be idle to claim that the defendant executed the note and mortgage merely for the accommodation of George. If such execution was an accommodation of any one, it must have been Long or the coal company, who were thereby relieved from giving a personal obligation to pay George the amount of the purchase price represented by the note and mortgage. Since the admitted facts show that George parted with the full consideration for which the note and mortgage were given, it is very evident that evidence of a parol agreement which would nullify or do away with the effect of the note, would be inadmissible upon a trial, and hence that such agreement constitutes no defense when set up by way of answer. This may work a hardship to *Henry*, even if, on payment, he is entitled to be subrogated to the benefits of the mortgage. But the contract evidenced by the writings is one of his own choosing, and the court must be content to apply to it the rules of law which are clearly applicable.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.

TAYLOR, J., dissents.