SECOND NATIONAL BANK OF BELOIT, Respondent, vs. MERRILL, Garnishee, Appellant.

*October 29 — November 17, 1891.*[1]

*Fraudulent conveyances: Husband and wife: Separate estate: Limitation of actions.*

1. In 1868 a husband transferred to his wife a promissory note in payment of a debt which he owed to her before their marriage, and

---

[1] The publication of this case was delayed in order that it might appear in connection with the preceding case, which was not finally determined until February 2, 1892.— REP.

afterwards gave her an interest in another note. In 1873, in ex-
change for the moneys collected by him on said notes, he caused to
be issued to her stock of equal value in a manufacturing company
in which he was interested. Subsequently said stock was exchanged
for stock in another company, which was afterwards sold. A part
of the proceeds of said sale was loaned to the husband's company,
and a part paid to the husband in 1882 as the purchase price of a
piece of land. Prior to and at the time of the sale of the land to
his wife, the husband was wealthy and owed but little; but in 1883
his company failed and he became insolvent. In garnishment pro-
ceedings by his creditors, no intent to defraud being shown, it is
*held* that the conveyance of the land to the wife was valid, and
that the securities taken by her for the money loaned to the hus-
band's company are her own property.

2. Prior to the marriage the husband had given to the wife his note
for a part of his debt to her. After the marriage she had destroyed
such note, and in 1868 sufficient time had elapsed to bring it under
the statute of limitations. *Held,* that these facts do not in any way
invalidate the transfer of the notes to her in 1868, since the stat-
ute of limitations does not run against the wife, and such transfer
would have been valid even as a mere gift.

3. The fact that the husband managed the property as his own, and
not as belonging to his wife, does not affect her title.

APPEAL from the Circuit Court for *Rock* County.
Garnishment. The facts are stated in the opinion.
*A. A. Jackson* and *F. D. Jackson,* for the appellant.
For the respondents there were briefs by *Wm. Ruger,*
and oral argument by *Mr. Ruger* and *Mr. B. B. Eldredge.*

ORTON, J. This is another of the garnishee actions in
the main action of the respondent bank against Merrill &
Houston Iron Works, Sereno T. Merrill and C. F. G. Col-
lins, as set out in the preceding case, *ante,* p. 142. As the
result of the trial of the garnishee issue, the circuit court
found and adjudged the deed executed by S. T. Merrill to
*Jane B. Merrill,* his wife, on November 28, 1882, of a tri-
angular piece of land in the city of Beloit, was so made
with intent to defraud creditors, and is void, and other

things hereafter mentioned.  The following are believed to
be the main facts established by the evidence:

The facts in relation to the Christmas gift on the 25th
day of December, 1868, by S. T. Merrill, the father, to his
six children, of three of the four notes he then held against
Benjamin Field and Israel Williams, are stated in the pre-
ceding case.  On that same day he transferred and deliv-
ered the other of said notes, then amounting to a little over
$2,000, principal and interest, to his wife, *Jane B. Merrill*,
in consideration and payment of about that sum that he
owed her for borrowed money and teacher's wages before
they were married, and which constituted a part of her
separate estate at the time of their marriage and after-
wards.  For a part of the same he gave to her his note,
which, however, she destroyed, and at the above date the
debt was barred by the statute of limitations.  It seems
that she did not wish to hold his note, or to sue him for the
money, which would seem to be perfectly natural to a con-
fiding and sensitive wife.  The fact of this indebtedness of
S. T. Merrill to his wife at that time depends exclusively
upon the testimony of his wife and himself, which was un-
contradicted, and there is no good reason for disbelieving
or questioning it.  Transactions so long ago would not
likely be remembered, and could not be stated in their par-
ticulars, with the clearness of those more recent.  But there
can be no well-grounded criticism of their testimony that
ought to impeach it or cast any doubt upon it.  When the
note of Field and Williams was so delivered to *Mrs. Mer-
rill* by her husband, she put it away in her room, and it
was there kept by her.  One of the children, Annette Mer-
rill, to whom the father, S. T. Merrill, gave one half of one
of said notes on Christmas, 1868, died, and Mr. Merrill
gave that interest in said note to his wife.

In 1873, when O. E. Merrill & Co. were incorporated in
the name of Merrill & Houston Iron Works, and transferred

all their assets and earnings to said corporation, of the value of at least $100,000, and S. T. Merrill had received his one-fourth of its shares of stock, his wife gave to him her said note and one half of another note that had been given to Annette Merrill, and the accrued interest, to be invested in the stock of Merrill & Houston Iron Works for her. S. T. Merrill then caused fifty shares of said stock to be issued to her in payment for said notes, or what he owed her for money collected on them for her, which amounted to about $5,000. In 1877, *Mrs. Merrill,* through her husband, invested her stock in the Iron Works in the stock of the Eclipse Windmill Company, and received fifty shares of stock in that company,— an even exchange of the stocks. In 1880, *Mrs. Merrill,* through her husband, sold her stock in the Eclipse Windmill Company to Fairbanks, Morse & Co. for $8,000, and received their two notes for it of $4,000 each. The first one due of these notes she loaned to the Merrill & Houston Iron Works, without security, and the other note she gave to her husband as the consideration of said deed to her of the triangular piece of ground in Beloit, on the 27th day of November, 1882. *Mrs. Merrill* had possession of the notes until they were so disposed of. This deed was made directly to *Mrs. Merrill* by her husband, and, afterwards learning that such was not the proper way, on the 19th day of September, 1883, another deed was made by S. T. Merrill to one Dickerman, and Dickerman deeded the lot to *Mrs. Merrill,* to cure the other deed. In 1880 the Merrill & Houston Iron Works gave to *Mrs. Merrill* $8,000 in stocks to secure her for the note of $4,000 she loaned to them as above stated, and in 1883 that company gave her two $2,000 notes to secure her for the same, and she surrendered to the company said stock. *Mrs. Merrill* received a small dividend on the assignment of the company on these notes. *Mrs. Merrill* sent from $2,000 to $2,500 of money to a mortgage and trust company in

the state of Kansas, to be loaned out for her, and she holds their security for the same. This money she received for rents of her house on said lot, for board of some of her children, $500 from her brother, and the balance from other sources in which her husband was not interested.

These are briefly the facts. The circuit court made very long findings of fact and conclusions of law, which need not be specially noticed. The judgment predicated on the above facts is only important. It is useless to consider the exceptions to the findings of fact. The judgment of the circuit court is substantially that the said deed of the triangular lot in Beloit is void for fraud against creditors, and that the two notes of Merrill & Houston Iron Works, given to her to secure her for the loan of the note of $4,000 to the company, are held by her fraudulently, and that they are void, and liable to be applied to plaintiff's demand; and that $1,100 of the securities of the mortgage and trust company she holds in the form of real estate coupon bonds is a part of her separate property, and $1,400 thereof, with accrued interest, is the money of S. T. Merrill, and liable to be applied on plaintiff's demand.

As a question of fact, it does not appear that either S. T. Merrill or his wife had any intent to defraud his creditors in any of the transactions above mentioned, and no such inference can be drawn from the facts.

1. *Mrs. Merrill* had from the start a separate estate of at least $2,000, and it consisted of money loaned to her husband and of a debt against him for wages. The learned counsel of the respondent contends that at least a part of that estate, which consisted of the note of S. T. Merrill of $500, should not be considered a part of the consideration of the purchase of the note on December 25, 1868, because the note was barred by the statute of limitations, and was burned up. The statute of limitations does not run against a wife, and presumption of payment by lapse of time does

not prevail against her. She ought not to be compelled to treat her husband as a stranger. Any other policy would beget disagreement and distrust. *Barnett v. Harsbarger*, 105 Ind. 410; *Dice v. Irvin*, 110 Ind. 561. How natural is that scene of her burning the note on their marriage, as if to say: " I guess I can trust you without your note." But if there was no consideration for the sale of the note to *Mrs. Merrill*, and if it was a mere gift, it was valid. He was then a man of wealth, and in debt but little, if any, and it was suitable to their circumstances. *Gray v. Barton*, 55 N. Y. 68; *Henschel v. Maurer*, 69 Wis. 576.

2. But the respondent's claim is long subsequent, and it cannot question the fact of the sale, and there could not have been any attempt to defraud creditors at that time certainly, for there could have been no motive or object. The circuit court does not find fraud in that transaction, but holds it void upon the theory that it did not take place, or that it was a sham and not real.

3. It is said S. T. Merrill dealt in and managed all these stocks and notes as his own, and not as belonging to his wife. If he did do so, it will not affect her title. But he acted as her agent in what he did, and so they understood as between themselves. They were husband and wife, and had the right to keep such a " family secret," if it was one.

During all these transactions S. T. Merrill was a man of wealth, and not at all embarrassed by his debts, and was abundantly solvent; and at the time of the sale of the 2.18 acres of ground in Beloit by S. T. Merrill to his wife he owned assets of the value of between $60,000 and $70,000, and was not personally in debt to any large amount. It seems that S. T. Merrill was regarded of such good financial credit that it must have been important as security to obtain his indorsement on the note in suit as late as October, 1883, more than a year afterwards. The judgment in this case has taken away half of the separate estate that

*Mrs. Merrill* owned when she was married to S. T. Merrill, over thirty years ago, and all the interest and increase obtained by its judicious investment since have gone with it. The testimony of S. T. Merrill and his wife is either true, or they committed perjury. They both testified that they had no intent to defraud his creditors or any one else in any of their transactions. It must be found that *Mrs. Merrill* participated in the intent to defraud, to invalidate any of these transactions, and there is not the least evidence of it. Good character is always valuable, and available to one on trial for crime even. The high standing and excellent character, good reputation, and pure life of S. T. Merrill and his wife ought to weigh down all the flimsy criticisms and suspicions cast by this trial on nearly all the transactions of their lives while together as husband and wife. It is impossible to find any evidence of fraud or intent to defraud in any of their transactions which they have been compelled to detail on this trial under oath. In such cases it often happens that "trifles light as air" are seized upon as badges of fraud, in the absence of all reliable evidence of fraud. Those two notes of the Merrill & Houston Iron Works belong honestly to *Mrs. Merrill;* that lot in Beloit is hers, because she bought it with her own means; and that money loaned in Kansas is all hers, and she sufficiently accounted for it as a part of her separate estate. We are satisfied that the judgment is against all the testimony.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to dismiss the garnishee proceedings against *Jane B. Merrill.*

WINSLOW, J. I dissent from the opinion of the majority of the court in this case, because, after a careful examination of the evidence, I do not think there is that clear and satisfactory preponderance of evidence against the findings of fact of the circuit judge which justifies this court in reversing such findings.