Brader vs. Brader.

BRADER, Respondent, vs. BRADER, Executor, Appellant.

*February 26 — May 21, 1901.*

*Estates of decedents: Married women: Statute of limitations: Evidence: Transactions with person since deceased: Deeds: Promissory notes: Settlement: Parol evidence.*

1. In transactions between husband and wife, the statute of limitations does not run against the wife. *Second Nat. Bank v. Merrill,* 81 Wis. 151, and *Fawcett v. Fawcett,* 85 Wis. 332, followed. CASSODAY, C. J., dissents.

2. Sec. 4069, Stats. 1898 (precluding a party from giving testimony in respect to transactions or communications by him personally with a person since deceased), does not extend to questions which call for information merely as to the witness's transactions with a third person, even though it may be argued, from the transactions between the witness and the third person, that certain acts were done by the deceased.

3. In an action to recover from the executor of plaintiff's husband certain sums, proceeds of property which belonged to her at the time of their marriage, which he afterwards collected and retained, it appeared, without objection, that a note, given for the purchase price of plaintiff's property, was drawn up by a third person in the presence of both herself and her husband. *Held,* that under sec. 4069, Stats. 1898, plaintiff's testimony that the note was given to her husband was inadmissible.

4. In such case plaintiff testified that a note belonging to her was settled and payment made to her husband in her presence, but that she did not participate in the transaction. *Held,* that the implication of authority given by her presence was a part of the transaction, and that, under sec. 4069, she was disqualified from testifying in respect thereto.

5. In such case plaintiff, after testifying that at the time of her marriage a certain note, part of her separate property, was in the

Brader vs. Brader.

custody of her daughter, who brought it into the room where plaintiff and her husband were, and that they left the house soon after, was permitted to answer the question whether, after she left the house, she had the note in her actual possession. *Held*, error, since such testimony tended directly to establish a transaction between plaintiff and her husband.

6. Plaintiff also testified that she received a draft for $250 from her father's estate and kept the proceeds in her possession. Her daughter testified that on one occasion her father asked the plaintiff where she had certain money; that plaintiff replied that it was in her pocket; and that her father thereupon insisted that a more secure place was in his safe, to which her mother responded "Here it is." *Held*, that testimony of plaintiff that she never had that $250, or any of it, after that day, if relevant at all, related to a transaction with the deceased, and was therefore inadmissible.

7. Plaintiff deeded her farm for an expressed consideration of $2,000, then paid her by the grantee in the form of four promissory notes of $500 each. *Held*, that it might be shown by other evidence that such consideration also included a settlement of certain claims then existing between the parties, which were consistent with and did not contradict any effective part of the writing. CASSODAY, C. J., dissenting, is of the opinion that the deed and notes should be considered as one paper in law, signed by both parties, and conclusively presumed to include the whole agreement, and that evidence of contemporaneous agreements between the same parties was therefore properly excluded.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

Plaintiff is the widow of the deceased, who died in February, 1899. They were married in January, 1872. She presented a claim for money had and received by the deceased: first, $1,150 from the auction sale of her household and farming effects and stock, held March 28, 1872; second, $30, proceeds of her wagon, sold and paid for April 1, 1872; third, $44, received for sale of hay on the last mentioned date; fourth, $300, proceeds of a promissory note of one Trevett, belonging to her, paid to decedent April 1, 1872; fifth, $48, proceeds of her promissory note against one Chandler received by the deceased April 1, 1872; sixth,

$250, moneys received by plaintiff from her father and handed to the deceased April 1, 1880. The answer was a general denial, statute of limitations, and an allegation that about December, 1872, a full accounting and settlement was had, covering all of the matters prior to that date, and covering a transfer of real estate owned by the plaintiff or by her children by a former husband, where it was agreed that the deceased should pay as full satisfaction and settlement the sum of $2,000, which was paid by the giving of his note for $500 to each of the four children of the plaintiff by her former marriage, all of which have been subsequently paid. Upon trial in the circuit court to a jury, a general verdict was rendered in favor of the plaintiff for the sum of $962.99, whereon, after motion to set aside the same and for a new trial based on the minutes of the court had been denied, judgment was entered, from which the defendant executor appeals.

*G. S. Martin* and *R. M. Bashford,* for the appellant.

For the respondent there was a brief by *F. J. & C. F. Lamb,* and oral argument by *F. J. Lamb* and *J. M. Olin.*

The following opinion was filed March 19, 1901:

Dodge, J. 1. One of the assignments of error most strenuously urged is that the trial court refused to hold the plaintiff's claim barred by the statute of limitations. Such refusal was predicated upon the view that such statutes do not run against a married woman upon claims against her husband. Were this question to be considered originally, it would seem clear that such position is not tenable. The terms of the statute of limitations are mandatory and comprehensive that "civil actions can only be commenced within the periods prescribed in this chapter" (sec. 4206, Stats. 1898), and that "actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued" (sec. 4219). Our statutes with reference

Brader vs. Brader.

to the rights of married women have removed all disability, both of contract and suit, with reference to separate property, and have enabled the bringing of suits with reference thereto against the husband as well as another. *Carney v. Gleissner*, 62 Wis. 493. Hence it cannot be doubted that a cause of action accrues in favor of a married woman as against her husband at the same time and with the same completeness that it does against any one else. The limitation statutes make no exception in her favor, and, however wise exception might be on grounds of public policy, such wisdom is a matter for consideration by the legislature, and not for the courts, when the legislature has acted. However, a different view was taken in *Second Nat. Bank v. Merrill*, 81 Wis. 151, decided in 1891, where it was said definitely and unambiguously that statutes of limitation do not run against a married woman as between her and her husband. This was based upon considerations of public policy. " She ought not to be compelled to treat her husband as a stranger. Any other policy would beget disagreement and distrust." Again, in *Fawcett v. Fawcett*, 85 Wis. 332, it was clearly intimated that this rule was recognized as established, and further citations offered in its behalf. We do not find that the citations support the rule, but it is now ten years since it was definitely laid down as a judicial declaration of the force and effect of our statutes. During that time most valuable rights may have reached such age that their destruction would result from a change of that rule, and property rights of great magnitude may have grown up in reliance upon it. The fact that the community, doubtless upon the advice of the profession, have relied on the immunity of married women from the bar of statutes of limitation is confirmed by the fact that a suit with reference to an ordinary money demand by wife against husband has seldom been known in this court, numerous as are the transactions out of which such suits might grow. We feel constrained,

Brader vs. Brader.

therefore, without yielding assent to the reason of the rule of *Second Nat. Bank v. Merrill*, to decline now to depart from it. If it is not such as the legislature believes best, a change by that body is easy, and that, too, in a way to take effect *in futuro* and not *ex post facto*. We therefore decide that no error was committed in holding the plaintiff's claims not barred by the statute of limitation.

2. Appellant assigns error upon the overruling of his objection to the competency of the plaintiff herself to give certain testimony on the ground that the same falls within the inhibition of sec. 4069, Stats. 1898, which, according to its terms, disables her to give testimony "in respect to any transaction or communication by her personally with the deceased." Among the questions, objections to which were overruled, are several which may be classed together, as resting upon the same principle. It having been testified that the deceased, Isaac G. Brader, superintended the auction sale of the plaintiff's property, the following questions were propounded to her:

"Did you yourself receive any money or notes received on the sale of that property that day?" "*Q*. Did any of the makers of notes then given ever pay any to you yourself?" "*Q*. Was it [a certain note of a third person] paid to you?" "*Q*. Did you ever receive any money from Dryden on that note?" "*Q*. After you were married to Brader, did you personally ever receive from Trevett anything in payment [of Trevett's note]?"

The trouble with these questions and their answers, uniformly in the negative, is that they were doubtless made the basis of argument to the jury for an inference that, if none of these payments of money or deliveries of notes were made to the plaintiff herself, the alleged payment of them to the deceased, Isaac G. Brader, was confirmed. Of course, the statute above cited has a clear and obvious purpose, which is to prevent the survivor to a transaction from benefiting by his own evidence thereto when the other party's mouth is closed by death as to a different version, and tes-

timony which with reasonable directness tends to establish
that a transaction did or did not take place between the
witness and the deceased is within the reason of the prohi-
bition; but the connection must be reasonably direct, and
we think it cannot be said to exist in the case of the ques-
tions above put, which called for information merely as to
the witness's transactions with third persons. Possibly the
appellant might have been entitled to some instruction from
the court that proof that Trevett, for instance, did not pay
his note to the plaintiff, must not be taken as tending to
prove that he did pay it to the deceased,— a fact to which
the plaintiff would probably not have been permitted to
testify; but the fact that counsel may argue, from transac-
tions between the witness and third persons, to an imaginary
inference that certain acts were done by the deceased, is not
enough to preclude her from testifying as to such transac-
tions. Such was the extent of the evidence given under the
questions above quoted.

Under the same objection to competency, it having ap-
peared without objection that a wagon was sold to one
Dryden at another auction, and a note drawn up by a third
person in the presence of both plaintiff and her husband,
the question was asked: "To whom was the note payable?
A. To my husband." This was merely evidence as to the
contents of a written paper, and seems not to be improper,
within the rule of *Page v. Danaher*, 43 Wis. 221.

A further objection under this statute arose as follows:
It having appeared that she owned a certain note against
one Trevett, and that some business was transacted at
Trevett's house, there being present herself, her husband,
Trevett, and others, which transaction she says she "saw
without in any way participating," the question was put
and answered over objection:

"*Q.* State what that transaction was. *A.* It was settling
that note that I had in my possession. Well, they had a
final settlement of that note. They settled it up. Mr.

Brader vs. Brader.

Brader took sheep, and there was some money coming, and it was paid over, and the note was all settled up. They exchanged, and Mr. Trevett paid Mr. Brader the money and the sheep, and Mr. Trevett received the note. *Q.* State whether or not, after this settlement with Trevett, you saw those sheep on this farm. *A.* I did. It was Mr. Brader's farm. He was carrying it on."

The rule of the New York decisions was adopted by us in *Wollman v. Ruehle*, 104 Wis. 603, 607, where it was stated that the statute " does not forbid testimony of transactions or communications between the deceased and third persons, though in the witness's presence, if he [witness] did not participate therein and they were not affected by his presence." This rule was also recognized and applied to exclude testimony in *Goerke v. Goerke*, 80 Wis. 520. The transaction testified to by plaintiff was the payment to the deceased of a note known by all parties to belong to the plaintff, in her presence, in which transaction she testifies that she did not participate. It is, however, inconceivable that her presence did not affect and influence the transaction. It doubtless served to authorize and justify her husband and the debtor in making the adjustment. No such settlement, to bind her, could have been made without either authority from her to her husband, which would have been a transaction between them, or such conduct on her part as to justify belief in such authority. A part of the transaction of the settling of that note between the deceased and Trevett was the implication of authority then and there given by her presence. It is plain that this transaction, to which she was permitted to testify, although between the deceased and a third person, was so influenced by her presence that she was in effect a party to it and should not have been permitted to testify thereto.

Another ruling in this category was substantially as follows: Plaintiff having testified that at the time of her marriage she had a certain note against one Trevett which was

Brader vs. Brader.

in the custody of her daughter Sarah, and that just before
she and her husband, Mr. Brader, left the house, the daugh-
ter, at her direction, brought the notes from her trunk into
the room where plaintiff and her husband were, and that
they left the house soon after, she was asked the following
question: " Q. After you left the house, did you have the
Trevett note in your actual possession?" And over objec-
tion she answered: "I did not." Either this testimony was
wholly irrelevant and immaterial, or it tended very directly
to establish a transaction between plaintiff and her husband.
She had testified to the production of the note to both of
them, and that without separation they both left the house
together, and that never after that time did she have that
note. It could have been offered for no purpose save as
tending to establish that the note was delivered to her hus-
band at that time, and that he never delivered it back to
her, to neither of which facts was she a competent witness.
We consider that this testimony transgressed the limitation,
and that error was committed in its admission.

Still another assigned error of this class arose as follows:
Plaintiff having testified to the receipt of a draft for $250
from her father's estate some time after her marriage, and
that she cashed the draft and had the $250 in money in her
possession, and there being evidence from a daughter, then
a little girl eight years of age, that on a certain occasion she
left her father and mother together in a room, and, after
closing the door, listened at the keyhole and heard her
father ask the plaintiff where she had certain money, and,
on her reply that she had it in her pocket, heard him insist
that a safer place was in the safe, to which her mother was
heard to respond, "Here it is," the plaintiff was then asked,
" Q. Did you have any other property or money at that
time?" to which she answered substantially in the negative.
She was also asked, " Q. Did you ever have that $250, or
any of it, after that day?" This testimony also seems to be

so directly connected with a transaction between plaintiff and deceased as to be improper. Its only purpose was to show that in a transaction to which some one else had testified, such testimony being ambiguous as to what money was referred to, she had only the specific $250. It is certainly an attempt to prove by this witness that the $250 was the subject of the conversation between her and her husband overheard by the child; and the answer to the second question, if relevant at all, tended to justify an inference of its delivery to him at that time and a denial that he ever returned it to her. The objections to her competency to answer these questions should have been sustained.

3. An important ground of error assigned consists in several rulings of the trial court excluding all evidence to establish that at a certain alleged settlement the plaintiff, besides conveying land, settled and released all claim for these moneys in consideration of $2,000 then paid her by the decedent in the form of four promissory notes of $500 each, payable, respectively, to her four children by first marriage. Such testimony was excluded for the reason that at the time of the transaction the plaintiff executed and delivered a simple deed of conveyance of her farm expressing a consideration of $2,000, and the decedent executed the four promissory notes above described. The court considered these writings to purport to express the contract between the parties, and to render inadmissible evidence of any other, further, or different terms or subjects. The view adopted by the trial court has so recently received consideration and disapproval that no extended discussion is necessary. We have in two very late cases reiterated the well-established rule that neither a simple deed of conveyance nor a promissory note purports to express the whole contract between the parties. *Nauman v. Ullman*, 102 Wis. 92; *Cuddy v. Foreman*, 107 Wis. 519. The deed but purports to convey property in execution, partially or wholly,

of some agreement; and the promissory note merely serves as convenient evidence of a promise to pay money. Usually such instruments grow out of agreements having other elements than the mere conveyance or than the mere future payment of money, and therefore no presumption arises that the parties have attempted to embody their whole contract in either instrument. Counsel invokes the rule that, when writings are made, no elements of contract may be shown by parol, unless the writing itself discloses that it is incomplete and not intended to cover the whole agreement. That rule in no wise supports the ruling now under consideration, for by overwhelming consensus of authority it is established that a mere deed of conveyance or a simple promissory note does disclose on its face and by its very character that it is not an attempt to set forth the whole contract made. 2 Jones, Ev. § 446. Of course, the additional elements of contract which may thus be proved must be consistent with, and not in contradiction of, the effective part of the writing. For example, evidence would not be admissible of an extraneous agreement that the deed should not convey the property described, or that the money should not be payable at the time specified in a promissory note. *Gillmann v. Henry*, 53 Wis. 465. We do not understand that the evidence offered was obnoxious to this rule, however. The trial court seems to have been misled by *Hei v. Heller*, 53 Wis. 415. That case is, however, wholly distinguished from *Cuddy v. Foreman* and its line of authorities; for the document involved in *Hei v. Heller* was not a mere deed of conveyance, but, while containing effective words of conveyance, also proceeded to set forth terms of bilateral agreement on several subjects, and on its face evinced an attempt and intent to embody therein the contract made by the parties. The excluded evidence, considered generically and not in detail, should have been admitted, and its exclusion was error, obviously to the prejudice of the defense.

By reason of the errors already indicated, the judgment must be reversed, and it does not seem necessary to discuss the detail of several minor assignments of error, hardly likely to present themselves in the same way upon another trial.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.

CASSODAY, C. J.    I concur in the reversal of the judgment in this case for the improper admission of evidence; but in my opinion the cause of action is barred by the statutes of limitation, cited in the opinion filed.    To my mind the cases of *Second Nat. Bank v. Merrill*, 81 Wis. 155, 156, and *Fawcett v. Fawcett*, 85 Wis. 332, are clearly distinguishable, for reasons stated by counsel for the appellant; but, even if this were not so, still I should feel bound to give effect to the statutes which are conceded to be so clear and unambiguous as to preclude construction.    Courts are instituted, not for the purpose of making laws, but for the purpose of declaring what the law is; and an erroneous declaration as to what the law is does not, in my judgment, change the law, although it is binding upon the parties in the particular case. Such erroneous declaration of the law simply puts the court making it out of harmony with the law; and this is particularly so as to statutory law, when the statute is clear and unambiguous, leaving no room for construction.    The legislature is expected to amend and correct statutes; but it can hardly be expected to review and correct erroneous statements of the law in judicial opinions, especially as such statements may at times be in direct conflict.    To give force and effect to all such erroneous statements is in my judgment to bring the law into endless confusion.

I am further constrained to say that in my opinion parol evidence was properly excluded as to whether the property in question was included in the settlement of December 4,

VOL. 110—28

1872. The deed signed by the one party, reciting a consideration of $2,000, and the four notes, of $500 each, signed by the other party, amounting to $2,000, should in my judgment be considered as one paper in law, signed by both parties, and hence as constituting the written agreement between the parties. *Gillmann v. Henry*, 53 Wis. 465, 468; *Herbst v. Lowe*, 65 Wis. 316. This being so, it necessarily excluded all contemporaneous agreements between the same parties in relation to the same subject matter or any part of it. Such written agreement is conclusively presumed to include the whole agreement. 1 Greenl. Ev. § 275; *Caldwell v. Perkins*, 93 Wis. 89. Such contemporaneous agreements are in my judgment excluded by the rule stated, although they may not contradict the written agreement.

Both parties moved for a rehearing.

For the appellant there was a brief signed by *R. M. Bashford*, and for the respondent there were briefs by *F. J. & C. F. Lamb*.

The motions were denied May 21, 1901.