Estate of Brundage: Brundage, Respondent, vs. Towers, Executor, Appellant.

*December 13, 1924—January 13, 1925.*

*Husband and wife: Transfer of personal property from wife to husband: Trusts: Presumption: Statute of limitations: Contracts during coverture.*

1. Where a wife during coverture transferred certain shares of corporation stock to her husband there was no presumption of a gift, and, in the absence of direct evidence of her intention to make an absolute gift, the husband is deemed in law to hold the shares in trust for the benefit of the wife.   p. 563.
2. In transactions involving the obtaining of personal property by the husband from the wife, the burden is on the husband to show that it is a gift and not a trust.   p. 563.
3. The fact that in a subsequent action at law and also in proceedings brought by the husband and wife to review an income-tax assessment the wife recognized such stock as belonging to the husband would not work an estoppel against the wife or a waiver of her rights, the original trust under which the husband received the shares never having been terminated or repudiated.   p. 564.

4. The statute of limitations does not affect or run between husband and wife as to contracts or obligations made or arising during coverture.   p. 565.
5. The husband being presumed to have held the stock in trust, and such presumption not being overcome, the wife is entitled to recover as claims against the estate of the husband the amounts he received from the sale of the stock.   p. 565.

APPEALS from a judgment of the county court of Sauk county: A. G. ZIMMERMAN, Judge.  *Affirmed.*

The deceased Victor Brundage, a bachelor, and the claimant, then the widow of one J. W. Cass, married November 9, 1916, each of them over fifty years of age.

She owned certain property received from her former husband, who died in 1911.   This property included about 276 shares, a controlling interest in the Pinckney Investment Company, owner of the Pinckney Apartment building in Madison; and stock in the Wisconsin Foundry Company.

In January and February, 1917, the claimant, then president of the said Investment Company, caused to be formally transferred to Victor Brundage 138 shares of its stock and new certificates were delivered to and retained by him.  Subsequently the two purchased each five shares more of such stock.

In August, 1921, *Mrs. Brundage* sold for about $28,500 her 143 shares to the Doctors Kennedy, who, with the shares they then owned by such purchase, thereby acquired a majority of the stock and consequent control.   Such sale was pursuant to a prior written agreement by which she further agreed, on condition that she obtained the 143 shares of stock then owned by Victor Brundage, to sell such for the further sum of $18,000.   Such agreement and the sale of the shares in her name was made without the knowledge of Victor Brundage and in his absence.   Upon his return *Mrs. Brundage* appears to have regretted selling the shares in her name because it thereby apparently reduced the selling value of the 143 shares standing in her husband's name, reducing such to a minority holding compared with the former ownership of the two as combined, being a controlling interest.

An action was then started by *Mrs. Brundage* against the Doctors Kennedy and another to set aside the aforesaid sale and the prior contract.

In November, 1921, such action was settled, Victor Brundage assigning to the Doctors Kennedy the 143 shares standing in his name and there was paid or secured to him $17,500 and pursuant to the expressed consent of *Mrs. Brundage*.

Subsequently attorneys were employed by Mr. and *Mrs. Brundage* to represent them in the proceedings before the board of review of Dane county concerning the income tax assessed against them so far as it was concerned with the sale of 286 shares aforesaid. In such proceeding the position was taken on behalf of *Mrs. Brundage* that in such sale the 138 shares originally transferred by her to Victor Brundage was his property as distinguished from her separate ownership of the balance. The testimony of Mr. Brundage to that effect in the tax proceedings was offered in evidence in this case.

April 23, 1923, Victor Brundage made his will, here admitted to probate, giving $1,000 to the claimant, his widow, and the residue of his estate to his sister, *Mrs. Friesinger,* one of the respondents.

The widow elected to take under the statute, renouncing under the will, and then filed a claim against the estate made up of three items, one of which has been disposed of by agreement, another being for $17,500, the amount received by Victor Brundage for his 143 shares so sold as aforesaid to the Doctors Kennedy (less a stipulated amount for the five shares he had separately purchased), another item for $1,800, proceeds from the sale of the Wisconsin Foundry Company stock.

*Mrs. Brundage* on the hearing below testified, without objection being then interposed, to the effect that she had sold her stock in the Wisconsin Foundry Company for $1,800 and that the check for that amount to her had been

indorsed by her January 3, 1917, and by her delivered to her husband, who had never paid its proceeds to her. *Mrs. Lulu Cass Smith*, daughter of Mrs. Brundage by the prior marriage, filed a claim for the $2,500 herein mentioned.

A special verdict was submitted which as answered by the jury was as follows:

(1) The 138 shares transferred by her were not acquired by Victor Brundage as a gift.

(2) In connection with his acquiring the aforesaid stock he agreed to pay *Mrs. Smith* the $2,500 above mentioned.

(3) By agreement in connection with the transfer of the 138 shares to Victor Brundage he was obligated to perform certain duties.

(4) He failed to comply with such agreement.

(5) As compensation, in case the claimant was held entitled to recover, the following:

(a) For the 138 shares, $17,500.

(b) For failure to comply with the agreement in connection with the transfer of such stock, $2,800.

(6) The check for $1,800 for the foundry stock was not a gift by her to him.

After motions by the respective parties the court allowed the claim of *Mrs. Brundage* for $17,500 less a stipulated deduction; disallowed the $2,800 found as damages; allowed the $1,800, the proceeds of the foundry stock, and disallowed the claim of *Mrs. Lulu Cass Smith* of $2,500.

From the disallowance of her claim *Mrs. Smith* has appealed. From the allowance of the claim of *Mrs. Brundage* the executor of the estate and the residuary legatee each appeal.

*Virgil H. Cady* of Baraboo, attorney for the executor, and *Sanborn, Blake & Aberg* of Madison, attorneys for *Margaret A. Friesinger*, residuary legatee; and the cause was argued orally by *Mr. Cady, Mr. W. J. A. Aberg,* and *Mr. John B. Sanborn.*

For *Jennie M. Brundage* and *Lulu Cass Smith* there was

a brief by *Olin & Butler,* and oral argument by *R. M. Rieser,* all of Madison.

Eschweiler, J.    The claim as filed by *Mrs. Brundage* against the estate of her husband as to the two items here involved was: "For stock of claimant appropriated by Victor Brundage to his own use, $17,500." And again: "For moneys of claimant appropriated by Victor Brundage to his use, $1,800," etc.    To such items objections were interposed by the executor to the effect that such were absolute gifts, not loans or advancements, and that there has been no valid promise by Victor Brundage to pay or return any moneys he so received.    The residuary legatee also objected on similar grounds and further asserted the bar of the statute of limitations.    Upon such record *Mrs. Brundage* and her daughter and claimant, *Mrs. Smith,* each demanded a jury trial under sec. 4043*b*, Stats.

Upon the hearing *Mrs. Brundage* apparently undertook to show or assumed the burden of showing the nature of the transaction by which the 138 shares of stock of the Pinckney Investment Association, one half of her holdings which she had acquired from her former husband, were transferred, after marriage, to her husband, the deceased.

Testimony on her behalf tended to show that some agreement was made in contemplation of marriage whereby she was to give to him the one half of her holdings in the said company and he in turn was to pay to *Mrs. Smith* the $2,500 above referred to, pay certain debts of claimant, and comply with certain other obligations.    The exact nature of such alleged agreement was left very indefinite and uncertain at the close of the testimony.    Such as the testimony was, however, it satisfied the jury and was accepted by the trial court as sufficient to warrant the conclusions that the transfer of the 138 shares of the Investment Company stock and the $1,800 check, proceeds of the sale of the Wisconsin

Foundry Company stock, were neither of them gifts, and that he did not perform whatever obligations he undertook.

It is here contended by appellants that evidence offered by the claimant was improperly admitted; evidence offered by the objectors to the claims improperly rejected; that proper questions were not embodied in the special verdict; and that the evidence was insufficient to support the findings and judgment.

We shall not discuss the several alleged errors separately. It appears, by proper evidence, that during coverture *Mrs. Brundage* transferred and delivered to her husband certain personal property, part of her separate estate, to wit, 138 shares of the capital stock of the Pinckney Investment Company and a check of $1,800 from the sale of the Wisconsin Foundry Company stock. Upon such undisputed facts there was no presumption that it was intended as a gift, and, in the absence of direct evidence of an intention to make by such delivery an absolute gift, the husband is deemed in law to hold it in trust for her benefit. *Harter v. Holman,* 152 Wis. 463, 139 N. W. 1128. This case cited among others the case of *Stickney v. Stickney,* 131 U. S. 227, 239, 9 Sup. Ct. 677, which is approved as to this point in *Garner v. Second Nat. Bank,* 151 U. S. 420, 433, 14 Sup. Ct. 390, and is followed in *Gilmore v. Gilmore,* 270 Fed. 260, 262, and in *Re Remmerde,* 206 Fed. 826, 830. To the same effect is *Wormley's Estate,* 137 Pa. St. 101, 20 Atl. 621; *Parrett v. Palmer,* 8 Ind. App. 356, 35 N. E. 713.

The doctrine so declared in *Harter v. Holman, supra,* was reiterated in *Friedrich v. Huth,* 155 Wis. 196, 200, 144 N. W. 202, but as there pointed out, such principle does not apply as to transactions concerning real estate because of specific statutes regulating such trusts.

In transactions involving the obtaining of personal property by the husband from the wife during the marital relationship the burden is on the husband to show that it is a

gift and not a trust.  *Boyd v. De La Montagnie*, 73 N. Y. 498, 502, approved in *Allen v. La Vaud*, 213 N. Y. 322, 328, 107 N. E. 570.

Under these rules of law, therefore, at the close of the testimony it was incumbent upon those who were objecting to *Mrs. Brundage's* claims to have proven that such items of personal property were absolute gifts to the husband by the wife rather than incumbent on the wife to have proven that they were not such gifts.  The trial court, however, charged the jury that the claimant in presenting her claims has the burden of proof as to her rights in the matter and made no other statement on the subject.  Even under such instruction the jury reached the conclusion that there was no gift as to either item, and we are satisfied that such was the proper and necessary result.

While it is true that *Mrs. Brundage* in her verified complaint, brought to set aside the contract for sale and the sale to the Doctors Kennedy in 1921, referred to the shares of stock then standing in her husband's name as his property, and in the proceedings brought by the husband and wife to review the income-tax assessment arising out of the sale of such stock again apparently recognized her husband's ownership of the 138 shares, yet such can neither work as an estoppel against *Mrs. Brundage* or as a waiver of her rights. Such attitude, subsequent to the delivery of the certificates of stock giving apparent title to the husband and while the trust thus thereby created was still in effect, cannot be considered as a denial of the trust or a converting it into a gift. No showing being made that the original trust relationship had been terminated or repudiated, neither the lawsuit nor the tax proceedings could, as between the husband and wife, be considered as giving to the husband or recognizing in him any greater or different interest than that which had been vested in him and created by the original transfer of the stock.  The trust was just as effective to the $17,500

which he received with her approval upon the sale of the shares of stock as had previously existed to the shares themselves.

If the record title to these shares or of the proceeds therefrom was to remain in the husband during his lifetime, he predeceasing his wife—and that is the proper conclusion under the evidence here,—then her attitude in the Kennedy lawsuit and the tax-review proceedings cannot be held to be a denial of such trust relationship.

Some suggestion was made as to the statute of limitations possibly applying by reason of the lapse of more than six years between the death of Victor Brundage in August, 1923, and the acquiring in January and February, 1917, of the certificates of stock and the $1,800 check. It has long been established that despite the broad and general language of the statutes of limitation they do not affect or run between husband and wife as to contracts or obligations made or arising during coverture. *Second Nat. Bank v. Merrill*, 81 Wis. 151, 155, 50 N. W. 505 (cited with other cases in 1 A. L. R. in note on p. 822), approved in *Fawcett v. Fawcett*, 85 Wis. 332, 339, 55 N. W. 405; again followed, but with some hesitation, in *Brader v. Brader*, 110 Wis. 423, 425, 85 N. W. 681; again recognized in *Gudden v. Estate of Gudden*, 113 Wis. 297, 303, 89 N. W. 111, and in *Flanagan's Estate v. Flanagan's Estate*, 169 Wis. 537, 542, 173 N. W. 297. But that such ruling is not to be held to apply to prevent the running of the statute as to contracts upon which the limitation began prior to marriage is pointed out in *Charmley v. Charmley*, 125 Wis. 297, 307, 103 N. W. 1106; *Enwright v. Griffith*, 169 Wis. 284, 286, 172 N. W. 156.

The personal property in question therefore having been given by the wife to the husband during coverture, and the presumption that he held the same in trust for his wife not having been overcome, she was entitled to recover as claims

against his estate the two items allowed by the court below.

This disposition of the case makes it unnecessary, under concessions made on her behalf to that effect, to consider the appeal of *Mrs. Smith* from the disallowance of her claim of $2,500.

*By the Court.*—Judgment affirmed.