HANNAH YEOMANS

v.

AARON D. PETTY, administrator of John M. Yeomans, deceased, and LUTHER Y. PETTY.

1. The statute of limitations does not run against a claim by a wife against her husband.

2. An entry of an indebtedness to his wife, made by a husband in a memorandum-book, which was never delivered to her, whatever its terms, can create no lien on his lands, and is merely an acknowledgment of his liability.

3. The genuineness of the husband's handwriting may be shown by an inspection, and by an expert's comparison thereof with other writing proved to be his, and also by witnesses to whom he exhibited the memorandum and explained its effect.

*Mr. J. F. Dumont* and *Mr. W. H. Morrow,* for complainant.

*Messrs. J. G. Shipman & Son,* for defendants.

BIRD, V. C.

The bill shows that the complainant is the widow of John M. Yeomans, deceased; that they were married in 1842; that soon after their marriage he purchased a farm, and, desiring to make improvements thereon, applied to her father for a loan of money to enable him to make them; that her father promised to loan him money upon the express condition that it should be regarded as an advancement to his wife, and treated as her separate estate, and that he should secure it to her as such; that her father thereupon advanced to her husband $500; that he used and applied the said moneys for the improvement of his farm; that in the year 1853 her father died, and that upon the settlement of his estate there was due her $550, which, in 1855, her husband requested her to loan to him, which she did upon his promise to

NOTE.—As to the statute of limitations applying to claims between husband and wife, see *Gray* v. *Gray, 12 Stew. Eq. 512, note.*—REP.

secure to her the repayment thereof; that in order to secure to·
her the payment of all the moneys due to her, the said John M.
Yeomans drew by his own hand a writing, a copy of which is·
set forth as follows:

"1855.

"John M. Yeomans Bored one thousen Dolers of money of My wife's Money·
that she gote from her father's estate, I Do give my farm to my wife Hannah·
Yeomans to secure her money, I was to pay her interes from dat. I paid Han-·
nah Yeomans inters.

"inters 10 Dolers 1860
"inters 20 Dolers 1865
"inters 8 Dolers 1870
"inters 8 Dolers 1874;"

that no portion of said moneys has been paid, except $46 by
way of interest, and that the principal sum and interest due at
the time of filing the bill exceeded the sum of $2,600; that the·
complainant and her husband had one child, a daughter, who·
grew to womanhood, married one Aaron D. Petty, by whom she·
had one child, and died in January, 1869, leaving her husband
and the said child her surviving; that said John M. Yeomans,
in 1876, executed a last will and testament, in and by which he
gave to his grandchild, Luther Y. Petty, the sum of $5, and all
the rest of his estate to the complainant during her lifetime, and
after her death to the board of missions; that he died December·
15th, 1877; that the will was offered for probate; that a *caveat*
thereto was filed and the probate thereof refused; that letters of
administration were granted to the son-in-law, Aaron D. Petty;.
that the personal estate being insufficient to pay the debts, an·
order was made by the orphans court directing the sale of real
estate; that the real estate of deceased intestate was sold by the·'
administrator; that after the payment of all the claims against
the estate there remained in the hands of the administrator for·
distribution $2,689.68.

The bill alleges that it was the intention of the said John M.
Yeomans, in and by the said writing above set forth, to secure·
to the complainant her said moneys and thereby to make the·
same a lien upon his real estate, and insists that it is the duty of·

the court to declare that such was the intention of John M. Yeomans, and that the same is a lien upon the moneys in the hands of the administrator, the proceeds of the sale of said land, and contains a prayer to that effect.

John M. Yeomans died in December, 1877, and the bill was filed in October, 1883.   Aaron D. Petty, the administrator, and Luther Y. Petty, his son, a grandson of the intestate, are made defendants, and have answered.   By their answer they deny all the principal allegations in the bill.   The administrator was made a party because he holds the funds.   The heir-at-law was made a party because he is entitled to the funds after all just claims against them are discharged.

The question is whether or not the complainant has established her claim.   On demurrer, it was held that the bill exhibited facts enough on which to found a suit in equity.   It seemed clear that, whatever force there might appear in the suggestion that the statute of limitations applied because of the lapse of six years from the date of the last payment of interest, strictly speaking, it was not applicable, in this case, to the first $500, since that sum, according to the bill of complaint, was received and held by the husband in trust for his wife, the complainant.

There is some testimony, independent of the writing above quoted, showing that the father-in-law did advance and pay money to John M. Yeomans.   There is also testimony showing that Mr. Yeomans obtained lumber and timber from his father-in-law ; what amount, however, does not appear.   The most important evidence is the writing above quoted.   If accepted at all it can only be as an acknowledgment of an indebtedness, not as creating or establishing any lien whatever.   Whatever may have been intended by Mr. Yeomans, if he drew that writing, however much he may have intended it to operate as a lien or mortgage, it did not and cannot so operate, because there was no delivery.   There is not the slightest proof that he ever surrendered the possession of it.   It was found upon one of the pages of a small blank-book, ten of the preceding pages of which book are written upon, some of which writing has been clearly proved to be the handwriting of Mr. Yeomans, the intestate.   So far as

32

the testimony shows, this book was in his possession during his lifetime, and was found among his assets after his death. Plainly, therefore, no lien upon the land was created thereby.

Can this writing be used as evidence of an acknowledgment of liability? If Mr. John M. Yeomans drew it himself, I think it can. Counsel for the defendants insisted that a careful examination and comparison of the writing and spelling with other writing and spelling in the same book, show that Mr. Yeomans is not the author. This test is one of mere inspection. What may satisfy the mind of one may not another, but such comparison and examination convince me that Mr. Yeomans made this writing with his own hand. In this I am sustained by the testimony of the witnesses who have been produced before me. Their testimony was objected to. It was insisted that all the proof produced was not sufficient legal proof that this paper was in Mr. Yeomans's handwriting. An expert was called, who swore that this writing was in the same hand as other writing which was proved to be Mr. Yeomans's. Such testimony, I think, is admissible. Besides that, witnesses were produced who said that Mr. Yeomans, a short time before his death, produced before them this book and turned to the page upon which the writing is, spoke of the writing and said, in effect, that it was to secure to his wife the money which he had had of her. It seems to me that the writing must be admitted to prove just what is asserted in it.

This view at once settles the amount which Mr. Yeomans received. He declares that he got from his wife $1,000. This seems to close the discussion as to amount.

But the statute of limitations is interposed by the answers and urged by counsel. Until the statute of limitations is expressly extended to such cases I cannot think it wise for the court to hold that, because the husband or wife, who has a claim against the other, does not bring suit therefor within the statutory period, it shall be barred. The policy of the law is to prevent litigation between husband and wife. The doctrine contended for would frequently render it inevitable and also disastrous to domestic peace. See *Angell on Lim.* § 60 ; *Towers* v. *Hagner, 3 Whart. 48.*

Newell *v.* Camden.

I conclude that the claim of the complainant is established. By the very terms of the writing it was to carry interest. Interest will be allowed *from* and *after* the year 1855, deducting the several amounts paid.

I shall so advise. The complainant is entitled to her costs.