WILLIAM F. METLAR

*v.*

ANNA METLAR WILLIAMS et al.

[Submitted March 2d, 1916. Decided June 9th, 1916.]

1. The statutes of limitations do not run on the claim of one spouse against the other during the continuance of the marital state.

2. A presumption of payment does not arise from the lapse of twenty years of non-payment of claims held by one spouse against the other during the marriage state.

3. A partial payment of a debt or a valid acknowledgment of it, made after twenty years from the due date, effectually overcomes the presumption of payment arising from efflux of time.

*Mr. Freeman Woodbridge,* for the complainant.

*Mr. Theodore Strong,* for the defendants.

BACKES, V. C.

This is a partition bill.   The lands consist of two large ad-
joining farms in Middlesex county, and were owned by George
W. Metlar, who died intestate October 18th, 1912, leaving him
surviving his widow, Catharine A. Metlar (who has since died),
and five children, among whom partition has been ordered, and
is about to be made by commissioners.

By a cross-bill the executors of Catharine A. Metlar, the
widow, seek to foreclose a mortgage of $15,000 on one of the
tracts known as the "Ross Hall Farm."   This mortgage was
made by George W. Metlar, the intestate, and his wife, to John
Van Doren, Mrs. Metlar's father, February 1st, 1878, payable
in one year, and by Van Doren's administrator, on June 13th,
1893, assigned to Mrs. Metlar, evidently as part of her share of
her father's estate.   Mrs. Metlar's will creates inequalities of
inheritance among her children, hence the foreclosure of the
mortgage.   In answer to the cross-bill, the complainant, who
was discriminated against, sets up the statute of limitations,
and payment; particularizing that nothing was paid on ac-
count of principal or interest for upwards of twenty years, on
the mortgage or on the bond which the mortgage was given to
secure.

The statute of limitations is not applicable as a bar to the
recovery of the debt out of the mortgaged premises. Metlar
and his wife, the maker and owner respectively of the bond and
mortgage, lived in matrimonial relation during her ownership
and down to his death, and it has been repeatedly held, based
upon the general policy of preventing litigation between hus-
band and wife, that the statute does not run on the claim of one
spouse against the other during the continuance of the marital
state.   *Gray* v. *Gray, 39 N. J. Eq. 511; Yeomans* v. *Petty, 40
N. J. Eq. 495; Alpaugh* v. *Wilson, 52 N. J. Eq. 424; affirmed,
52 N. J. Eq. 589; Condit* v. *Bigalow, 64 N. J. Eq. 504; Col-
lins* v. *Babbitt, 67 N. J. Eq. 165; Bennett* v. *Finnegan, 72 N.
J. Eq. 155.*

Nor, and because of the unity of husband and wife, can the
statute be successfully interposed to defeat the outstanding
mortgage estate of the wife on the ground of adverse possession

of her husband. *1 Am. & Eng. Encycl. L. (2d ed.) 820.* In *Swinley* v. *Force, 78 N. J. Eq. 52,* it was held, on authority, that possession in common by heirs of the mortgaged lands was not adverse to the mortgage estate held by one of them, and not a bar to foreclosure.

As to the satisfaction of the mortgage, there was no attempt made to prove that payment had been actually made. The defence in this respect rests solely upon the presumption of payment from lapse of time of non-payment for upwards of twenty years. From what has been observed regarding the inadmissibility of the statute of limitations, in litigation concerning the rights of married couples against each other, it must be perfectly obvious that the presumption cannot arise as between them by efflux of time. It would be a most illogical course of judicial conduct to countenance the rule of presumption of payment—a rule of evidence and of public policy—established by the courts for social repose, while the statutory restriction, founded upon and a legislative expression of the rule itself, is rejected as inapplicable to the situation. However, if the contrary view should be entertained, and the presumption of payment permitted, then the circumstances of the parties and the evidence in the case rebut the presumption. That the mortgage debt remains unpaid is not controverted. That, standing alone, as I understand it, is not sufficient to overcome the presumption. Vice-Chancellor Emery, in *Blue* v. *Everett, 55 N. J. Eq. 329,* stated the rule to be "that unless the delay for twenty years is satisfactorily accounted for or explained, the presumption of payment of a bond and mortgage or other pecuniary debt is conclusive and cannot be rebutted simply by proof in fact of non-payment without accounting for the delay. * * * The period of twenty years has been fixed as the sufficient limit of time to give rise to the presumption, and when this time has elapsed, unaccounted for or unexplained, the law, upon general principles and without reference to the circumstances of the particular case, raises the presumption of payment. If the delay is satisfactorily accounted for, then the presumption of payment from lapse of time does not apply as an absolute presumption of payment, but the delay still remains as one of the facts in the case upon which the ulti-

mate question of payment or non-payment is to be determined, in connection with the other evidence." Now, has the delay in this case been satisfactorily accounted for or explained? It seems to me that the intimate relation of trust and confidence existing between husband and wife meets the demand of the rule precisely. If that relation is sufficient to exclude a positive legislative enactment, like the statute of limitations, it must be quite as potent in overcoming a mere presumption. The relation of parent and child and grandchildren, between the mortgagee and the owners of the land, and the likelihood of distress being brought upon the latter by foreclosure, was held to be sufficient to rebut the presumption of payment. *Executors of Wanmaker* v. *Van Buskirk, 1 N. J. Eq. 685.* See, also, *Ayres* v. *Ayres, 69 N. J. Eq. 343; Ibid. 842; Chancellor* v. *Seiberlich, 75 N. J. Eq. 501.*

But we need not stand on the relationship alone to rebut the presumption, and for these established circumstances in the case. After the death of John Van Doren, the mortgagee, and in the settlement of his estate, his three children and only next of kin adjusted the amount due on the mortgage, and under date of November 21st, 1892, endorsed on the bond as follows: "All interest on the above bond is acknowledged to have been satisfied and paid to John Van Doren in full to August 1st, 1892, and shall be so considered in the settlement of his estate." And in 1909, the mortgage then being the property of his wife, Metlar endorsed on the bond, to which his wife's signature is appended, as follows: "Received September 22d, 1909, five dollars on the within bond." Furthermore, shortly before his death he acknowledged to one of his daughters that the mortgage debt was then in existence. Presumably, the adjustment, certified on the bond by the next of kin, was made with Mr. Metlar, the mortgagor. The mortgage shortly afterwards became his wife's property, taken, as I understand, in part payment of her share of her father's estate, and it is to be assumed that in the distribution of the estate Metlar took a care that his wife receive her just and full proportion. But, if perchance he was not aware of these transactions as they took place, his subsequent endorsement, aside from its more important significance, stands as a recogni-

tion and acknowledgment of the settlement made by the next of kin; for it can hardly be supposed that their endorsement on the bond escaped his attention.

In *Swinley* v. *Force,* Vice-Chancellor Stevenson declared that a partial payment made within the twenty-year period surely is a sufficient "explanation," within the rule enunciated in *Blue* v. *Everett.*

The payment of $5 on account of the mortgage debt by the mortgagor to the holder of the mortgage within six years of the filing of the bill, the evidence whereof is the undisputed record made by the mortgagor himself (*Yeoman* v. *Petty, 40 N. J. Eq. 495*) and the admission made by him within a less period, to the effect that the mortgage lien then survived, most cogently and convincingly prove its non-extinguishment, and absolutely neutralize and destroy the presumption of payment raised against it. *Moore* v. *Clark, 40 N. J. Eq. 152; Miller* v. *Teeter, 53 N. J. Eq. 262.* "The legal presumption of payment which the law allows at the expiration of twenty years after the debt becomes due is an act of tenderness toward the debtor, which is sustained by the absence of evidence, and, like other presumptions, must yield and give way before any circumstances and facts on which the mind can rest with satisfaction by which it is rebutted or repelled. It has not the power or effect of a positive statutory enactment of limitation or oblivion which extinguishes the original demand, and requires a new promise to pay, or its equivalent. The mind must be free to admit the presumption, and if the exhibition of facts or circumstances interdict or forbid the conclusions, the protection is removed. * * * There could be no doubt whatever that an acknowledgment of the debt before the efflux of twenty years excluded the legal presumption of payment. The question raised and argued was as to the competency of an acknowledgment after the expiration of twenty years from the time the bond became due. The court did not err in their instruction to the jury. The burden of proof lies on the plaintiff; and if he satisfies the jury by proper evidence that the defendant after the expiration of twenty years admitted the existence of the debt, it would be converting legal presumption into credulity to instruct a jury that they were authorized to presume payment against

positive evidence. The legal presumption of payment would be changed into a legal and peremptory bar, contrary to all authority." *Eby* v. *Eby, 5 Pa. St. 435.*

In *Ayres* v. *Ayres, supra,* a suit by a widow against her late husband's administrators, on a note more than twenty years old, Vice-Chancellor Bergen held that repeated acknowledgments of the debt made by the husband to the wife, the last time being shortly before his death, were sufficient to repel the presumption of payment, and illustrate the function of such admissions in connection with the rule in this manner: "The admission of the husband would not be competent to remove the bar of the statute of limitations, but we are not now considering the effect of the statute, nor controlled by its limitations as to evidence, and the husband's statements were not received for the purpose of creating a new debt by way of acknowledgment, nor to remove the bar of the statute, but simply to aid us in ascertaining whether the presumed payment arising from lapse of time did in fact exist."

Counsel contesting the foreclosure urged strenuously on the argument this proposition, as stated in his brief:

"As to George W. Metlar, the presumption of payment was complete February 1st, 1899. Then twenty years was up from the due date of the bond. That presumption having been once *complete then was conclusive,* and applying by analogy the statute of limitations under the rule as laid down in *Van Dike* v. *Van Dike, 15 N. J. Law 289,* an acknowledgment thereafter did not operate to revive in the holder of the mortgage the right of re-entry."

The difficulty with the proposition is that it is not pertinent to the inquiry. The statute of limitations, and the legal right of re-entry, are not involved. The investigation relates solely to the question whether the payment and acknowledgment repel the legal presumption. This is emphasized in *Ayres* v. *Ayres, supra.* A partial payment, like any other valid acknowledgment of the debt made after twenty years from the due date or last payment of interest, effectually dissipates the presumption. *Blue* v. *Everett, supra.*

The doctrine of laches is also invoked to resist the foreclosure. *Ten Broeck* v. *Jackson, 71 N. J. Eq. 582,* is cited and relied

upon by counsel as sustaining his position. The circumstances to which the doctrine was there applied are so dissimilar to the facts here presented as to render the case inapposite as a precedent or authority. The same policy that places a ban upon the statute of limitations prevents the introduction of this equitable defence. *Prima facie,* and in the absence of special equitable circumstances, it is not evidence of laches that either the husband or wife fail to prosecute the other in a court of equity pending the continuance of marital relations. *Bennett* v. *Finnegan, supra.*

The executors of Mrs. Metlar, who died December 9th, 1913, acted with due diligence. Their delay in acting on the mortgage until the partition suit was brought, was both reasonable and commendable under the circumstances. It seems to have been mutually agreeable to the heirs-at-law to enjoy in common the lands now sought to be partitioned until the filing of the bill. Their waiting until that occurrence, which provoked them into enforcing their claim, cannot, in any view of the doctrine of laches, be regarded as within its application.

The executors may have a decree foreclosing the mortgage, with costs. Execution will be withheld until the coming in of the report of the commissioners now partitioning the land. In all probability the heirs will be able to adjust their differences amicably.