Argued and submitted on motion to dismiss appeal and on the merits April 14; motion denied and decree affirmed May 19; rehearing denied September 15, 1931

In re Banfield's Estate

BANFIELD *v.* SCHULDERMAN et al.

(299 P. 323, 3 P. (2d) 116)

*Albert L. Gordon,* of Portland, for appellant.

*A. C. Shaw* and *J. O. Bailey,* both of Portland, for respondents.

### On Motion to Dismiss Appeal

This is an appeal of Charles C. Banfield, individually, from an order of the department of probate of the circuit court of Multnomah county, Oregon, denying an amended petition filed September 5, 1929, by Charles C. Banfield, executor of the estate of Marie Banfield, deceased, for an order to sell real property belonging to the estate. The order from which this appeal is sought also requires said Charles C. Banfield, individually, to account for certain moneys to the executor of the estate, he, the said Charles C. Banfield himself being such executor.

A motion to dismiss the appeal was duly interposed by respondents. An order was heretofore made overruling said motion with the privilege of renewing it upon argument of the case upon the merits. Respondents in their brief and argument, upon the merits, renewed their motion to dismiss the appeal.

Four grounds are relied upon by the respondents in support of this motion:

First: That no notice, as provided by law, has been served upon respondents.

Second: That no notice of appeal was ever served upon the executor of the estate.

Third: That the appeal was prematurely taken in so far as the same concerns respondents.

Fourth: That the certificate of the court reporter to the transcript of testimony is insufficient in that it fails to state that the witnesses were sworn to tell the truth, the whole truth, and nothing but the truth.

The first and third grounds urged for dismissal of the appeal must be considered together for the reason that the first ground, namely, that no notice of appeal, as required by law, was served upon respondents is tenable or untenable, dependent upon whether the service of the notice of appeal which actually was served was premature or not.

■ As to the second ground, that no notice was served upon the executor, we hold that where, as in this case, the appellant is the executor and throughout the litigation in the circuit court and this court the same attorney represents the appellant as an individual and as the executor, and the order from which this appeal is prosecuted, among other things, requires appellant as executor to account for assets becoming such because of a claim due the estate from him as an individual, the service of the notice of appeal by the individual upon himself as executor would be a vain and idle gesture; hence, the failure in this case to make such service constitutes no ground for dismissal of the appeal.

■ As to the fourth ground for dismissal, namely, insufficiency of the certificate of the reporter, the respondents fail to distinguish between this case, wherein the certificate was made by a duly appointed official court reporter, and the case of *Johnson v. Johnson*, 131 Or. 235, 240 (274 P. 918, 282 P. 1082), wherein a private stenographer, who had not taken the oath prescribed by statute, reported the testimony. In the case at bar the certificate of the official reporter is substantially the same as that which was approved in *Sanborn v. Fitzpatrick*, 51 Or. 457, 460 (91 P. 540). The certificate of the clerk of the court also accompanies the transcript. This furnished sufficient authentication of the record under rule 2 of this court.

Subdivision 1 of section 7-503, Oregon Code 1930, provides:

"(1) A party to a judgment, decree or final order or any order from which an appeal may be taken in any action, suit or proceeding, desiring to appeal therefrom, or some specified part thereof, may by himself or attorney give notice in open court, or before the judge if the order, judgment or decree be rendered or made at chambers, at the time said judgment, decree or order is made, that he appeals from such decision, order, judgment or decree, or from some specified part thereof, to the court to which the appeal is sought to be taken; and such notice shall thereupon, by order of the court or judge thereof, be entered in the journal of the court. If the appeal is not taken at the time the decision, order, judgment or decree is rendered or given, then the party desiring to appeal may cause a notice, signed by himself or attorney, to be served on such adverse party or parties as have appeared in the action or suit, or upon his or their attorney, at any place where he or they may be found, and file the original with proof of service endorsed thereon, with the clerk of the court in which the judgment, decree or order is entered. Such notice shall be sufficient if it contains the title of the cause, the names of the parties and notifies the adverse party or his attorney that an appeal is taken to the Supreme or circuit court, as the case may be, from the judgment, order or decree, or some specified part thereof."

Subdivision 5 thereof provides:

"(5) An appeal to the Supreme court, if not taken at the time of the rendition of the judgment or decree appealed from, or at the time of making the interlocutory order appealed from, shall be taken by serving and filing the notice of appeal within sixty (60) days from the entry of the judgment, order or decree appealed from, or to the circuit court within thirty (30) days after such entry, and not otherwise; provided, that in all cases where the right to an appeal to the Supreme Court shall exist at the time this act

shall come into force, the time for taking such appeal is hereby extended for the period of sixty (60) days thereafter.''

In our examination of the cases tending to support respondents' position, we find none based upon such statutory provisions. In 1893, the legislature of the state of Washington enacted a statute with similar provisions: Chapter LXI, 1893 Session Laws of Washington, pp. 119, 121, §§ 3 and 4.

In 1895, the Supreme Court of the state of Washington passed upon the question we have to decide in the case at bar. The holding of the Washington court thereupon, in an opinion rendered by Mr. Chief Justice Hoyt, is as follows:

"Respondents move to dismiss this appeal for the reason that it was taken before the judgment had been made, signed and entered. That it was taken after the announcement by the court of the terms of the judgment is conceded, and, such being the fact, we think the motion must be denied. The statute governing appeals should be liberally construed to the end that parties may have a review by this court of the rulings of the superior courts when they so desire. The appeal statute when thus construed will require us to give force to a notice of appeal given after the court had announced its decision, although it was before the signing and entering of the formal judgment. For some purposes the judgment may not be complete until thus signed and entered, but after such announcement it was so far complete as to sustain a notice of appeal": *Hays v. Dennis*, 11 Wash. 360 (39 P. 658).

■ The statute of Oregon, which was enacted in 1899, unquestionably was taken from the Washington statute of 1893: 1899 Session Laws, p. 227. The language of the Oregon statute is not exactly the same as that of the Washington statute and in the Washington

case the statute is not quoted, and hence we would not be justified in holding that the enactment of the Oregon statute carried with it the adoption of the construction thereof theretofore given by the Supreme Court of the state of Washington, but the pronouncement of the Washington court, being based upon a statute so similar to ours, is strongly persuasive.

Many courts have held that service of notice of appeal before entry of judgment is premature: *McLaughlin v. Doherty,* 54 Cal. 519; *In re More's Estate,* 143 Cal. 493 (77 P. 407); *In re Dunphy,* 158 Cal. 1 (109 P. 627); *In re Sheid,* 122 Cal. 528 (55 P. 328); *Estate of Pearsons,* 119 Cal. 27 (50 P. 929); *Home of Inebriates v. Kaplan,* 84 Cal. 486 (24 P. 119); *Coon v. United Order of Honor,* 76 Cal. 354 (18 P. 384); *Matter of Fifteenth Ave. Extension,* 54 Cal. 179; *Onderdonk v. San Francisco,* 75 Cal. 534 (17 P. 678); *In re Rose,* 72 Cal. 577 (14 P. 369); *Schroder v. Schmidt,* 71 Cal. 399 (12 P. 304); *Kimple v. Conway,* 69 Cal. 71 (10 P. 189); *Los Angeles County Bank v. Raynor,* 61 Cal. 145; *Thomas v. Anderson,* 55 Cal. 43; *Stebbins v. Larson,* 4 Cal. App. 482 (88 P. 505); *Robinson v. Salt Lake City,* 37 Utah 520 (109 P. 817); *Watson v. Odell,* 53 Utah 96 (176 P. 619); *Martin v. Smith,* 11 S. D. 437 (78 N. W. 1001); *Greenly v. Hopkins,* 7 S. D. 561 (64 N. W. 1128); *Nepper v. Wordehoff,* 42 S. D. 170 (173 N. W. 644); *Hahn v. Bank,* 25 Wyo. 467 (171 P. 889); *Culbertson v. Ainsworth,* 26 Wyo. 314 (181 P. 418); *Thompson v. Great Western Accident Association,* 136 Iowa 557 (114 N. W. 31); *Hodgins v. Heaney,* 15 Minn. 185 (Gil. 142); *McTavish v. Great Northern Railway Co.,* 8 N. D. 333 (79 N. W. 443); *Wolff v. Wilson,* 25 Pa. Super. Ct. 266.

■ The distinction between the statute of Oregon and the statutes of the states from which the cases last

above cited are taken is that in Oregon the right to an immediate appeal is expressly given, and in the other jurisdictions the only means of appeal is by notice after the rendition or entry of the judgment, which leads this court to the conclusion that it was not intended by the legislature of Oregon that any interval should intervene between the time when by oral notice an appeal could be instituted and the time that the judgment might be spread upon the records of the court, during which no notice of appeal could be served. Moreover, in the case of *Hull v. Thoms,* 82 Conn. 386 (73 Atl. 793), under a statute, requiring notice of appeal to be filed within one week after the rendition of the judgment, it was held that a notice of appeal was not premature when filed within the specified time after the acceptance by the court of the certificate but before entry of judgment thereupon.

The motion to dismiss the appeal is overruled.

### On the Merits

On February 2, 1928, Marie Banfield died testate. On February 28, 1928, Charles C. Banfield was appointed by the probate department of the circuit court in and for Multnomah county, Oregon, and duly qualified as executor of her estate.

On the 5th day of September, 1929, Charles C. Banfield, as such executor, filed in said department of said court an amended petition for an order directing the sale of real property on September 6, 1929. H. J. Schulderman and Marie Schulderman, two of the heirs and devisees of said decedent, filed their answer to said executor's petition. In their answer to the executor's petition, these two heirs and devisees deny the allegations in said amended petition; that a full and

true and complete inventory and appraisement of the property of deceased was filed, and allege that the inventory and appraisement did not include a note of Charles C. Banfield to decedent for $1,000 and some interest, and did not include moneys on hand, which note and moneys came into the possession of the petitioner at the death of decedent, and that other moneys had come into the hands of said executor belonging to said estate, since the death of said decedent, in the amount of $198.86.

Deny the allegations that all of the personal property was specifically devised and that no portion thereof is available for the payment of debts or expenses of administration of said estate.

Deny the allegations that there are still unsatisfied and outstanding claims against the said deceased in the sum of $4,964.64.

Deny that lot 9, block 5, Howe's addition to Portland, is of the probable value of $3,500, and allege that it was appraised and is of the probable value and actual value of $5,000.

Deny that all of the personal property was specifically bequeathed by said decedent and allege that the above-mentioned note and moneys received by said executor are not specifically devised, and that only a life estate in the said moneys and in bonds, household furniture, books, bric-a-brac and works of art mentioned in said will and inventory and not specifically devised to others than Charles C. Banfield were specifically devised to said Charles C. Banfield, and the interest therein specifically devised is subject to and not exempt from debts and claims against said estate and the residuary interest therein devised by said will to Charles C. Banfield is subject to such debts and claims.

Allege that the following itemized claims alleged in said petition are not proper charges against said estate and should not be allowed: $375 of item 21, loan of First National Bank, item 25, $17.12, proportion of costs, *Edwards v. Banfield* partition suit; item 26, $250 proportion of attorney's fee allowed in said suit; item 27, for taxes on property mentioned in subparagraphs 1 to 9 inclusive, and item 27, in a total sum of $1,161.95; item 20, $3 for cutting grass on Laurelhurst lot; item 19, $12.75, repairs to roof at 1197 Division street.

Deny that item 22, inheritance taxes $550, item 23, executor's fees, $700, and item 24, attorney's fees, $700, are just, correct or proper claims to be allowed against said estate, at least in the amounts alleged.

For a further and separate answer to said petition, the said Henry J. Schulderman and Marie Schulderman allege:

I

"That they are two of the heirs and devisees of said decedent under last will and testament described in said petition, and are seized of an interest devised to them by said will in the real property described in said petition.

II

"That the real property described in said petition was specifically devised by said will, except certain residuary interests therein.

III

"Allege that it does not appear to have been and was not the intention of the testator, decedent, to exempt from liability for the payment of funeral charges, expenses of administration and/or of claims against said estate, the personal property of said decedent specifically devised by her said will.

## IV

"Allege that there is sufficient personal property belonging to said estate and in the hands of said executor to pay the debts, funeral charges, expenses of administration and other liens, taxes and charges mentioned in said petition.

## V

"Allege that the petitioner, the executor herein, received among the assets of decedent at the time of her death a promissory note of said Charles C. Banfield to said decedent, in the sum of $1,000 and some interest, the amount of which is unknown to us, and, as we are informed and believe and therefore allege, said decedent had on hand and in the bank certain moneys, which came into the hands of said executor, the amount of which are unknown to us, and that said executor failed to include said note and moneys in his inventory filed herein, and that said executor has since his appointment received other moneys belonging to said estate in the sum of $199.86 and has failed to account therefor; and that he should be required to account for and pay said note and to account for said moneys.

## VI

"That in and by the will of said decedent there was devised to Charles C. Banfield, husband of said decedent, a life estate in all the real property described in said petition and in all cash on hand, bonds of the United States not therein otherwise bequeathed and in all household furniture, books, pictures, bric-a-brac and works of art not therein specifically bequeathed to others and that in and by said will some of said household furniture was devised to others, subject, however, to the life estate of said Charles C. Banfield therein, and the residuary interest in said personal property affected by said life estate was devised to said Charles C. Banfield generally but not specifically.

## VII

"That in and by said will there was devised to said Charles C. Banfield a life estate in all of the real property described in said petition and certain interest therein to Henrietta Edwards, H. J. Schulderman and Marie Schulderman. That by decree of the circuit court for the state of Oregon in a partition suit lately pending therein, in which Henrietta Edwards was plaintiff and said Charles C. Banfield, Henry J. Schulderman and Marie Schulderman and others were defendants, there was set apart to said Charles C. Banfield, in fee, lot two (2) block one hundred seventy-four (174) Couch's addition, Portland, Oregon, and to Henrietta Edwards the 9.85 acres in section twenty-seven (27) Craig road, lots three (3) and four (4), Albina, and a one-half interest in lots (16), Love's addition and to H. J. Schulderman lot nine (9), block three (3), Williams addition, lots two (2) and three (3), block thirteen (13), Watson's addition, lot two (2), block 236, Holladay addition, and a one-half interest in block sixteen (16), Love's addition. That in and by said decree said Charles C. Banfield was required to pay one-third of the 1927 and 1928 taxes upon all of the property mentioned in item 27 on page 3 of the petition, and the $1,161.95 mentioned in said item is for taxes for said years, and $563.34 thereof is for such taxes for the year 1928; and were assessed and levied and became liens on said property as of March 1, 1928, which was after February 2, 1928, which was the date of the death of said decedent. That said Charles C. Banfield as life tenant under said will and under said decree is personally liable for and bound to pay all of said taxes amounting to $1,161.95, and the same are not proper claims and charges against the estate of said decedent.

## VIII

"That Charles C. Banfield has filed herein a petition asking that $3,000 in value of lot nine (9), block five (5), Howe's addition, Portland, Oregon, be set apart to him as a homestead. That said property if set

apart as a homestead is subject to and chargeable with
the expenses of the last sickness and funeral expenses of
said decedent and the charges of administration of her
estate; and that of said claims set forth in said peti-
tion $3,695.32 is an account of such expenses of the last
sickness and funeral expenses of said decedent and
charges of administration of her estate, and such por-
tion thereof as is just and proper to be allowed and
charged against said estate should be charged to said
lot nine (9), block five (5), Howe's addition, Portland,
Oregon, if set apart as a homestead, and the same
is by law subject thereto, and the other property of
the decedent is not chargeable therewith. The $66.37
mentioned in item 8 of said petition is for taxes for
1928 on said property claimed as such homestead and
is a charge thereon and not a charge against the other
property of said decedent.''

On September 11, 1929, said executor filed a reply
to said answer as follows:

### I

''Admits the allegations contained in paragraph I.

### II

''Denies that the real property described in said
amended petition is specifically devised or any part
thereof save and except part of lot 4, block 10, Fran-
setti's addition to Rhododendron, Clackamas county,
Oregon.

### III

''Denies the allegations contained in paragraphs
III, IV, and V and the whole thereof.

### IV

''Replying to paragraph VI, admits that there was
devised to Charles C. Banfield, husband of said dece-
dent, a life estate in all the real property described in
said amended petition and that the residue of the per-
sonal property of the said deceased was bequeathed to
your petitioner and further admits that in and by said
will some of the household furniture, books, pictures,

bric-a-brac and works of art were devised to parties other than your petitioner as all as more particularly set forth in the last will and testament of the said deceased to which your petitioner will refer more particularly on the trial of these issues. Save as herein expressly admitted denies the allegations of said paragraph VI.

"Replying to paragraph VII, admits that a life estate in all of the real property described in said amended petition was devised to your petitioner and further admits that certain interests in the said real property were devised to Henrietta Edwards, H. J. Schulderman and Marie Schulderman, denies that there was set apart to your petitioner Charles C. Banfield in fee lot 2, block 174, Couch addition, Portland, Oregon, or any property whatsoever, denies that in or by said decree said Charles C. Banfield was required to pay one-third or any portion of the 1927 and 1928 taxes upon any or all of the property mentioned in item 27, page 3, of said amended petition, denies that said Charles C. Banfield as life tenant under said will or under said decree is personally liable for or bound to pay all or any of said taxes.

## VI

"Replying to paragraph VIII thereof, your petitioner admits that he has filed a petition asking that $3,000 in value of lot 9, block 5, Howe's addition, Portland, Oregon, be set aside to him as an exempt homestead, denies that said property if set apart as a homestead is subject to or chargeable with the expenses of the last sickness or the funeral expenses of said decedent or the charge of administration of her estate, admits that the sum of $66.37 mentioned in item 8 of said petition is for taxes for 1928 on said property claimed as such homestead, admits that the said charge is not a proper claim against the estate of the said deceased and save as herein expressly admitted denies each and every allegation contained in said paragraph VIII."

(Prayer omitted.)

This matter was presented to the court on an original hearing on said petition, a further hearing thereon, and an adjourned hearing thereon, and further renewed adjourned hearing.

The probate court made an order which, in so far as it is pertinent to the questions herein, is as follows:

"And it appearing to the court that said matter was presented to the court on an original hearing on said petition, a further hearing thereon, and adjourned hearing thereon, and further renewed adjourned hearing. And testimony· having been introduced on said petition and in opposition thereto, and it further appearing to the court that said devisees objected to the granting of said petition on the ground that said executor had not filed a correct inventory of the property belonging to the estate, and had not accounted to the court for moneys coming into his hands as such executor, and

"It appearing to the court, and the court finds, that at the time of the death of the said Marie Banfield, Charles C. Banfield, widower of said decedent, was indebted to her on a promissory note, dated April 26, 1915, in the sum of one thousand dollars ($1,000), bearing interest at the rate of six (6) per cent per annum, on which note no part of the principal had been paid, and on which the sum of $180 had been paid as interest on May 1, 1918, and there is due from said Charles C. Banfield to the estate, the sum of $1,000 and interest at the rate of 6 per cent from April 26, 1918, and that the said Banfield has failed and neglected to account for said note and said money so due to said estate, and said indebtedness would not have been disclosed to the court had it not been for said devisees, and

"It further appearing to the court, and the court finds that at the time of the death of the said Marie Banfield she had on deposit in her own name in the bank the sum of $282.40, a portion of which the said Charles C. Banfield, as executor, used in paying the following claim, to wit:

| | | |
|---|---|---|
| "1. | Clerk's fees | $ 12.00 |
| "2. | For appraisal of jewelry | 5.00 |
| "3. | To the Sunday Welcome for publication of notice to creditors | 4.00 |
| "4. | J. P. Lipscomb, appraiser | 40.00 |
| "5. | Webster L. Kincaid, appraiser | 40.00 |
| "6. | B. Metzger, appraiser | 40.00 |
| "7. | A. R. Wright, music at funeral | 10.00 |
| | "Total | $151.00 |

leaving a balance of $131.40 to apply on other claims, and that the above items so paid are improperly set forth in said executor's third account as having been paid by him out of his own individual funds, and

"It further appearing to the court, and the court finds, that said Charles C. Banfield has, since his appointment as executor, and as executor, received from Henry J. Schulderman the sum of $199.86, which the said executor has failed to account for, and which belongs to said estate, and

"It further appearing to the court, and the court finds, that in the said executor's petition to sell real property, and in his third account, there is an item of $625 as a loan from the First National Bank, $375 of which said money so borrowed was used to pay the individual indebtedness of said C. C. Banfield to Messrs. Cake & Cake, attorneys at law, as attorneys' fees, for said Banfield, and should not be charged to said estate, and

"It further appearing to the court, and the court finds, that there is included in said petition to sell real property and in the said third account, an item of $250 as attorney's fees, claimed by said executor to be chargeable to said estate growing out of a partition suit, in which suit the estate was not a party, and which is chargeable to the devisees of the estate personally and not to the estate, and a further item of $17.12 as costs in said partition suit, which is not chargeable to the above estate, and

"It further appearing to the court, and the court finds, that there is the sum of $600 due the estate from Henry J. Schulderman on or before July 1, 1930, and which will be paid on or before July 1, 1930, and

"It further appearing to the court, and the court finds, that there is the further sum of $2,000 due from said Banfield individually to said estate, under the order of this court heretofore entered, dated March 26, 1930, on the application of said Banfield to have certain property set aside as a homestead, and

"It further appearing to the court, and the court finds, that said C. C. Banfield has, since the death of the said Marie Banfield, been in possession of lots 2 and 3, block 13, Watson addition, and lot 2, block 174, Couch addition, and has been collecting the rents thereon, which said property is improved, and by reason thereof that said Banfield is required to pay the taxes upon said property, and the said taxes are not an indebtedness of the said estate, and

"It further appearing to the court, and the court finds, that the personal property tax of $50.75 for the year 1928 is not a proper charge against the estate, and

"It further appearing to the court, and the court finds, that the charge for fire insurance and property liability insurance on lot 2, block 174, Couch addition, referred to as 'the Glisan Street property,' are chargeable to C. C. Banfield, life tenant, and not to the estate, and

"It further appearing to the court, and the court finds, that the item for taxes, in the petition to sell real property and in the third account, on block 16, Love's addition, lot 2, block 236, Holladay's addition, and lots 3 and 4, block 8, Albina addition, are chargeable to the devisees under the last will and testament of Marie Banfield, deceased, and are not chargeable to the estate, and

"It further appearing to the court, and the court finds, that the said executor has sufficient money on hand, together with the amount which he owes the estate, and the money due the estate as aforesaid, to

pay the claims which have been presented against the estate and approved, and which are still unpaid, and to leave a substantial excess in the hands of the executor, and

"It further appearing to the court, and the court finds, that the value of real property is depressed at the present time, and that the sale of the real property of the estate at the present time, or any part thereof, would not bring anywhere near its real value, and that the attorney for the executor stated in open court at the time of the hearing, that it was so depressed, and that in all probability the value of real property would be substantially enhanced within the next six months and would find a much better market; and the court being fully advised,

"It is ordered and decreed that said petition to sell real property be, and the same is hereby denied; that the said executor forthwith furnish the court a surety bond in a sum not less than $6,000 conditioned upon the faithful performance by him of his duties as executor of the said estate; that the said Charles C. Banfield, individually, pay to said Charles C. Banfield, executor, the amount above found due said estate from said Charles C. Banfield on said notice above referred to, and that he account to the court for the balance of said $282.40 in the bank belonging to said estate, the $199.86 turned over to him by the said Schulderman, and that the said money, together with any other money in his possession as such executor, be used to pay off the valid verified claims against said estate, which have been approved, according to their priority."

Charles C. Banfield as an individual appeals.

KELLY, J. Eleven alleged errors of the probate court are assigned as follows:

1. In holding appellant liable on the note in question.

2. In holding that the bank account is part of the property of the estate.

3. In holding that $109.86 received from the Peter H. Schulderman estate was part of the Marie Banfield estate.

4. In holding that $375 of the amount paid Messrs. Cake & Cake was the individual indebtedness of appellant.

5. In holding that $267.12, to wit: One-third of plaintiff's attorney's fees ($250) and one-third of plaintiff's taxed costs ($17.12) charged by the circuit court upon the property set apart in severalty to the heirs and devisees should not be paid by the executor out of the estate funds.

6. In finding that Banfield, individually, owed the estate the sum of $2,000.

7. In requiring appellant to pay the taxes upon said property and in declaring that the said taxes are not an indebtedness of the said estate.

8. In holding that the personal property tax is not a proper charge against the estate.

9. In holding that the fire insurance and property liability premiums paid by the executor are not proper charges against the estate.

10. In holding that certain taxes charged against property set aside by the heirs and devisees in severalty are not chargeable to the estate.

11. In denying the petition for leave to sell real property.

■ In approaching a consideration of the first assignment of error, we are met with the contention that the probate court is without jurisdiction to pass upon the question of appellant's liability upon the note in question.

To this point the following cases are cited: *Manser's Estates,* 60 Or. 240 (118 P. 1024) ; *Harrington*

*v. Jones,* 53 Or. 237 (99 P. 935); *Re Bolander's Estate,* 38 Or. 490 (63 P. 689); *Dray v. Bloch,* 29 Or. 347 (45 P. 772); *Gardner v. Gillihan,* 20 Or. 598 (27 P. 220). These cases are not in point. The first four deal with disputes between the administrator of the estate and a third party as to property claimed by both. The last is a case wherein the executor was removed because he refused to surrender two New York drafts for the benefit of the estate. In none of these cases is it decided that the probate court is without jurisdiction to determine the facts as to whether the executor of an estate was indebted to the estate prior to qualifying as such executor.

The case of *Hodge v. Hodge,* 90 Me. 505 (38 Atl. 535, 40 L. R. A. 33, 60 Am. St. Rep. 285), is instructive upon this question. In that case Mr. Justice Wiswell quotes from the case of *Sigourney v. Wetherell,* 47 Mass. (6 Met. 553), as follows:

" 'The administrator's own debt being assets, it becomes an item in his administration account, and the question whether such debt is due, and the amount of it, becomes a question of probate jurisdiction in the first instance, to be decided by the judge of probate, on all questions as well of fact as of law, subject to an appeal to this court.' "

Proceeding, Judge Wiswell says:

"In *Stevens v. Gaylord,* 11 Mass. 256, it was said: 'The case might have been very different if the defendant had denied that he owed this debt, and had refused to insert it in his inventory, and to account for it as the property of the deceased.' And in some other of the Massachusetts cases above cited, the rule as laid down contains the qualification, 'when the debt is acknowledged,' although we are aware of no case in which this has been decided to be the law, and we think upon principle and authority that there is no difference in

the rule, whether the debt is acknowledged or denied. In *Winship v. Bass,* [12 Mass. 198], the indebtedness was not acknowledged, the executor refused to treat his indebtedness to the estate as assets, claiming that it was extinguished by his appointment. The court held that the debt was not extinguished, but must be treated as assets, and that, as his sureties were liable upon his bond, he need not be removed. In *Sigourney v. Wetherell* [6 Met. 553], the indebtedness of the administrator was not acknowledged but on the contrary was strenuously denied. In *Tarbell v. Jewett* [129 Mass. 457], it was said: 'The note therefore became assets of the estate, from which the liability of the estate to the guardian could properly be met, and it is immaterial that it was not named in the inventory or account. * * * The fact that an executor charges himself with his debt in the inventory or account is an important fact; it settles the question that he owes the estate and the amount of his debt, and, in those cases where the debt has thus been accounted for, great stress has been laid upon the fact. * * * But an executor cannot escape his liability, or change the character of it, by failing to charge himself with his own debt; if he could, then by neglecting his duty there would be no remedy for the estate. Nor is charging himself with it the only way in which the fact of his indebtedness may appear or be proved; and if it appears or is proved otherwise, then his liability is established as conclusively as if he had charged himself with the debt in his inventory, and his sureties become responsible if he fails to account for it.' "

Under the doctrine of the foregoing authority, the probate department of the circuit court had jurisdiction to pass upon the validity of the alleged claim against appellant.

It is claimed by appellant that the statute of limitations has run against the note in question. It is urged by respondents that such a defense, appearing upon the face of the pleading, must be made by demurrer, and, if not so appearing, then by an affirmative plea.

■ We hold that upon objections to a petition to sell real property formal pleadings are not prescribed and that "any evidence, which would have been admissible under any form of pleading, is admissible; and any defense, which could have been pleaded in an ordinary law action, will be considered as though formally pleaded": *In re Estate of Fisher*, 128 Or. 415, 431 (274 P. 1098).

The note is dated April 26, 1915. It provides for payment on demand to decedent of $1,000, with interest thereon at the rate of 6 per cent per annum from date "interest to be paid annually, and if not so paid, the whole sum of both principal and interest to become immediately due and collectible at the opinion of the holder of this note."

It is endorsed as follows: "May 1, 1918—Received interest from April 26, 1915, to April 26, 1918, being three years interest $180, one hundred and eighty dollars. Marie B."

■ It is urged by appellant that the statute of limitations has run upon this note. At the time it was executed and at all times since until the death of the payee, the maker of the note and the payee were husband and wife. Where a transaction between a husband and wife is involved, the statute of limitations does not apply: *Lahr's Appeal*, 90 Pa. 507; *Barnett v. Harshbarger*, 105 Ind. 410 (5 N. E. 718); 17 R. C. L. 964, par. 334, note 17 citing *Parrett v. Palmer*, 8 Ind. App. 356 (35 N. E. 713, 716, 52 Am. St. Rep. 479); *Charmley v. Charmley*, 125 Wis. 297 (103 N. W. 1106, 110 Am. St. Rep. 827); *Morrish v. Morrish*, 262 Pa. 192 (105 Atl. 83, 86); *Bowie v. Stonestreet*, 6 Md. 418 (61 Am. Dec. 318, 324); *Second National Bank v. Merrill & Houston Iron Works*, 81 Wis. 151, 155 (50 N. W. 505,

29 Am. St. Rep. 877); *Fourthman v. Fourthman,* 15 Ind. App. 199 (43 N. E. 965); *Yeomans v. Petty,* 40 N. J. Eq. 495, 498 (4 Atl. 631); *Metlar v. Williams,* 86 N. J. Eq. 330, 333 (97 Atl. 961); *Givernaud v. Givernaud,* 81 N. J. Eq. 66, 76 (85 Atl. 830); *Burnham, Hanna, Munger & Co. v. McMichael,* 6 Tex. Civ. App. 496 (26 S. W. 887); *Gudden v. Gudden's Est.,* 113 Wis. 297 (89 N. W. 111); *In re Gracie's Est.,* 158 Pa. 521 (27 Atl. 1083); *Marsteller v. Marsteller,* 93 Pa. 350; *Gray v. Gray,* 39 N. J. Eq. 511; *Alpaugh v. Wilson,* 52 N. J. Eq. 424 (28 Atl. 722); *Affirmed Wilson v. Alpaugh,* 52 N. J. Eq. 589 (33 Atl. 50); *Collins v. Babbitt,* 67 N. J. Eq. 165 (58 Atl. 481); *Condit v. Bigalow,* 64 N. J. Eq. 504 (54 Atl. 160); *Bennett v. Finnegan,* 72 N. J. Eq. 155 (65 Atl. 239); *Harrell v. Harrell,* 117 Ind. 94 (19 N. E. 621); *Comstock v. Coon,* 135 Ind. 640 (35 N. E. 309); *Wiesner v. Zaun,* 39 Wis. 188; *Westcott v. Miller,* 42 Wis. 454; *Fawcett v. Fawcett,* 85 Wis. 332 (55 N. W. 405, 39 Am. St. Rep. 844); *Brader v. Brader,* 110 Wis. 423 (85 N. W. 681).

The testimony in support of alleged payment and alleged taint of fraud is no more convincing to this court than it was to the probate court. We hold that no error was committed by the probate court in directing the executor to account for the amount of money due upon said note as part of the assets of the estate of Marie Banfield.

■ As to the bank account, the appellant claimed that it represented money derived from his business. It was in the name of the decedent and, while there is evidence tending to show that appellant was authorized to sign decedent's name to checks drawn thereupon, there is no corroboration whatever of appellant's testimony that the money belonged to him. We cannot

assume that the lower court erred in respect to this money and there is nothing in the record disclosing such error.

■ In his brief, appellant well says that the record is not definite upon the source from which the moneys came to him in the amount of $199.86. This amount was paid by Mr. H. J. Schulderman to appellant. Appellant's attorney indicates that these moneys were rents which had accrued prior to the death of Mrs. Banfield. In this view, they belonged to her estate, and no error was committed by the probate court in so holding.

■ Assignments four and five may be considered together. A suit was instituted by one Edwards against his cotenants to partition the real property belonging to the estate of P. H. Schulderman, deceased, father of Marie Banfield. The heirs and devisees of Marie Banfield were owners of an undivided one-third interest in said real property. Appellant, individually, but not as executor, was made a party defendant. A decree was entered upon stipulation of the parties. We can see no good reason for implicating the estate of Marie Banfield in the matter of costs and attorney's fees in that case. No error was committed by the probate court in that regard.

As to the sixth assignment, this court has held that this item should not have been charged to appellant: *In re Banfield, Ante* p. 167 (296 P. 1066).

■ As to the seventh assignment, there is nothing in the record to indicate that the taxes sought to be asserted as a basis pro tanto for the sale of real property were charges upon the property of the estate prior to the death of Marie Banfield. As we read the testimony, all the taxes set out in the petition as unpaid claims accrued after her death; and ever since her

death the appellant personally has been in possession of the real property, not as executor, but, as the life tenant thereof. In that state of the record, it is not the duty of the executor as such to pay such taxes.

The same principle applies to premiums for insurance which are referred to in assignment number 9: 3 Woerner, The American Law of Administration (3d Ed.) 1789, § 518.

■ As to assignment number eight, we think that the executor should pay the taxes upon the personal property of the estate accruing thereupon prior to the final distribution of said personal property. We are unable to ascertain from the record, however, when the tax in question was levied, and, hence, cannot predicate error upon the probate court's holding in that respect.

■ As to the tenth assignment, if the taxes there mentioned were charges upon the interest of Marie Banfield in the real estate in question before her death, the same are proper charges against her estate, not, however, because of any order made in a case wherein the executor as such was not a party, but because such taxes were liens upon the assets of her estate and as such should be paid by her executor.

As to the eleventh assignment of error, when we consider the effect of our holding and that of the probate court, with respect to the funds in the hands of appellant, which he should account for as assets of the estate, and with respect to the items claimed by him as charges against the estate, but disallowed by both courts, it is evident that no error was committed in denying appellant's petition for an order to sell the real property sought to be sold by the executor.

No good purpose will be served by remanding this matter to the probate court. In so far as the court's

holding was at variance with that which we have declared herein, modification thereof can be made upon consideration of future accounts filed by appellant as executor. The denial of appellant's petition to sell real property should be and it is adjudged to be without prejudice to further application therefor, if in the future administration of the estate proper grounds are presented. With these qualifications, the order of the probate court is affirmed, neither party to recover costs or disbursements on this appeal.

BEAN, C. J., RAND and ROSSMAN, JJ., concur.

---

On separate petitions by appellant and by respondents for a rehearing

PETITIONS FOR REHEARING DENIED

(3 P. (2d) 116)

KELLY, J. Appellant has filed a petition for rehearing. In it he asserts that he is in possession of the real property belonging to the estate in his capacity as executor and not as an individual. The writer gained the opposite view from reading the record. At the time this record was made, the question of appellant's claim for a homestead had not been finally determined and yet he was occupying the property in Howe's addition. He testified that he lived upon the property in Franzetti's addition. He was unable to testify with any exactitude as to the amount of rent he had collected, and had made no effort to collect the rent for some six weeks or two months. A suit partitioning part of the realty had been instituted and prosecuted to a decree without recognizing appellant's possession as executor. Moreover, the writer did not think it customary for an executor to take possession of unremunerative real property. For these reasons, it was

said in the original opinion that the appellant appeared to be in possession of the real estate in his individual capacity and not as executor.

▪ Under the statute, the executor has a right to take possession of the real property. Sections 11-309, 11-810, Oregon Code 1930.

▪ In the original opinion, it was held that the life tenant is chargeable with the payment of the taxes. This is the general rule. The liability of the life tenant for taxes, however, is limited to the amount of income, if any, such life tenant derives from the realty; and in case such real property is occupied by the life tenant, then to the reasonable rental value thereof. 21 C. J. 957, citing *Sheffield v. Cooke,* 39 R. I. 217 (98 Atl. 161, Ann. Cas. 1918E, 961); *Newby v. Brownlee,* 23 Fed. 320; *Nation v. Green,* 188 Ind. 697 (123 N. E. 163); *Clark v. Middlesworth,* 82 Ind. 240; *Johnson v. Johnson's Trustee,* 164 Ky. 724 (176 S. W. 199); *Woolston v. Pullen,* 88 N. J. Eq. 35 (102 Atl. 461); *Murch v. J. O. Smith Mfg. Co.,* 47 N. J. Eq. 193 (20 Atl. 213); *In re Menzie's Estate,* 54 Misc. Rep. 188 (105 N. Y. S. 925); *Crockett v. Crockett,* 2 Ohio St. 180; *Stone v. Littlefield,* 151 Mass. 485 (24 N. E. 592); *In re Martens' Estate,* 16 Misc. Rep. 245 (39 N. Y. S. 189); *Poole v. Union Trust Co.,* 191 Mich. 162 (157 N. W. 430, Ann. Cas. 1918E, 622).

▪ In appellant's brief on his petition for rehearing, recognition is given to the salutary rule, which, in his capacity as executor in possession of the real property, he should observe that, where the trust estate to whose income the life tenant is entitled consists in part of unimproved property producing no revenue, the life tenant is bound to pay the taxes on the unimproved property from the income derived by him from the

revenue-producing property so far as such income extends. (Page 4, Appellant's Brief upon motion for rehearing.) 21 C. J. 937.

Clause III of the will of testatrix is as follows:

"If my cousin, Anna Schulderman, aged 49 years, and now residing with me at Portland, Oregon, shall still reside with me at the date of my death, then and in that case, and in that case only, I give and bequeath unto her my Singer Sewing Machine, and Government Bonds to the par value of One Hundred Dollars, or, one hundred dollars in cash, at the election of the executor of this, my last will and testament, hereinafter nominated and appointed."

Clause IV thereof is as follows:

"To my husband, Charles C. Banfield, aged 50 years, residing at Portland, Oregon, I give and bequeath a life estate in all of the real property of which I may die seized, also, a burial space in the Schulderman Family Cemetery Lot at Riverview Cemetery, in Multnomah County, Oregon; my engagement ring; all cash on hand, and bonds of the United States Government, not herein otherwise bequeathed; also all household furniture, books, pictures, bric-a-brac and works of art not herein specifically bequeathed unto others."

■ It will be noted that, as to the cash on hand and government bonds, the bequest of appellant is subject to the terms of the conditional bequest to Anna Schulderman. It is, however, a specific bequest. *Noon's Est.*, 49 Or. 286 (88 P. 673, 90 P. 673) ; *In re Wilson's Est.*, 85 Or. 604 (167 P. 580) ; *Kearns v. Kearns*, 77 N. J. Eq. 453 (76 Atl. 1042, 140 Am. St. Rep. 575) ; *Drake v. True*, 72 N. H. 322 (56 Atl. 749) ; *In re Bush's Est.*, 89 Neb. 334 (131 N. W. 602) ; *Pendergast v. Walsh*, 58 N. J. Eq. 149 (42 Atl. 1049) ; *Hamilton v. Hamilton*, 75 Misc. Rep. 21 (134 N. Y. S. 645) ; *Holcomb v. Mullin*, 167 Ark. 622 (268 S. W. 32) ; *Ely v. Nye* (In re Daniel's Est.) 192 Iowa 326 (184 N. W. 647) ;

*Burnett v. Heinrichs,* 95 N. J. Eq. 112 (122 Atl. 681) ;
*In re Beckett's Est.,* 15 N. Y. St. Rep. 716; *Fow's Est.,*
12 Pa. Co. Ct. Rep. 133; *Morehead's Ex'r. v. France,*
153 Ky. 44 (154 S. W. 378) ; *Towle v. Swasey,* 106 Mass.
100, 106.

 The term "cash on hand" embraces money
in a solvent bank subject to check. *In re Johnston's
Est.,* 190 Iowa 679 (180 N. W. 740). The cash on hand
thus bequeathed to appellant is exempt from the opera-
tion of an order of sale as long as any property of the
estate, not specially devised or bequeathed, remains
unsold or unappropriated to the payment of funeral
charges, expenses of administration or claims. Section
11-604, Oregon Code 1930.

Appellant quotes from section 11-306, Oregon Code
1930, and argues that, by operation of law, the one
thousand dollar note given by him to the testatrix be-
came transmuted into money. (Mason's Est., 42 Or.
177, 70 P. 507), and as such under the will passes to the
husband.

Said section 11-306 is as follows:

"The naming any one executor in a will shall not
operate to discharge such executor from any claim
which the testator had against him, but the claim shall
be included in the inventory; and if the person so
named afterwards take upon himself the administra-
tion of the estate, he shall be liable for such claim as
for so much money in his hands at the time the claim
became due and payable; otherwise he is liable for such
claim as any other debtor of the deceased."

 The purpose of this statutory provision is
to prevent a debtor of an estate from avoiding payment
of his debt by accepting an appointment as executor.
A will speaks only from the death of the testator unless
a contrary intention is manifest from the language of
its provisions. *Pape v. United States National Bank,*

135 Or. 650 (297 P. 845), and cases there cited. When the testatrix died, the note in question was merely written evidence of a chose in action. It was not cash on hand. Appellant contested its validity, contending that it had been paid; that it was tainted with fraud, and that the statute of limitations had run against it. No promissory note is mentioned in the specific bequest to appellant. We are unable to concur with appellant in his contention to the effect that this note was specially bequeathed. We hold that it was not.

■ Appellant insists that he should be given credit for premiums paid upon insurance policies. The character of the policies as well as the kind of insurance determines whether the executor may claim credit for such premiums. In the instant case, the record does not disclose whether or not the policies provide that loss, if any, shall be paid to the estate. It is a matter very properly under the supervision of the learned judge of the probate court.

■ On this appeal, we are called upon to determine whether appellant's petition to sell a portion of the real property should have been granted. Unless and until the personal assets, not specifically bequeathed, have been exhausted, an order ought not to be made to sell real property for the payment of funeral charges, expenses of administration or claims against the estate. In this case, it appears that such personal assets have not been exhausted. In our original opinion, we held that the circuit court was right in denying said petition. As to that order, we adhere to our original opinion.

Respondents have filéd a motion for rehearing upon the question of whether the appeal herein should have been dismissed. Permission was given respondents to file a written brief, but none has been filed.

Both petitions for reharing are denied.